Charles M. Hughes, J.
The plaintiffs sue in this action at law for a sum of money under an insurance policy issued by the defendant on January 13, 1956 for one year. The plaintiffs are the owner and mortgagee, respectively, of about 135 acres of land and buildings at Long Lake, New York. The policy in question contained a mortgagee clause payable to Joseph Zabaw-ski, plaintiff.
In July, 1954 the plaintiff, Michael Romanych, was the sole owner of the premises and Joseph Zabawski was the sole mort *270 gagee. At the time, the plaintiff, Michael Eomanych, made a contract in writing with one Boland Austin and Jennie Austin, his wife, to sell the above premises for a stated sum of money, payable in installments of $100 monthly, with interest, and giving Austin possession of the premises.
At that time, the premises were improved with one large frame building heretofore used as a hotel, and two small outbuildings of lesser value. In October, 1954 the hotel building was totally destroyed by fire. Prior to the happening of the fire, certain articles had been removed from the hotel building and used to equip the four buildings here in question. Litigation developed between the plaintiffs and the Austins and the insurance companies. In June, 1956 those claims were compromised. In March, 1955 the Austins defaulted in their payment of monthly sums and also defaulted in payment of taxes which they agreed to pay under their contract with Eomanych and therefore, in July, 1955 Eomanych, in conformity with the provisions of the contract, gave notice to the Austins that the full amount of the unpaid installments was then due and payable and demanded payment within a reasonable time. The amounts were not paid. Shortly thereafter, Eomanych, in the Supreme Court of Hamilton County, began an action of ejectment against the Austins. The Austins appeared and thereafter a motion was granted striking out the answer of the Austins. A judgment was entered on or about December 5, 1955 and about one month thereafter, execution of this judgment was issued to the Sheriff of Hamilton County. An order of eviction was rendered on July 25, 1956 and on or about July 26, 1956 the Sheriff of Hamilton County gave notice to the Austins that in five days he would compel them to vacate the premises.
During the time of his possession, Austin had proceeded in the partial erection of four buildings which are known as building No. 1 — Austin’s residence; building No. 2 —Ziehm’s residence; building No. 3 — bunkhouse; and building No. 4 — cottage.
On or about July 30,1956 building No. 2 was removed from the premises by placing it on skids and towing it by a tractor. The character of the damage to the other buildings was the destruction of the roof of building No. 1; the breaking of windows and frame and of doors and frames on several of the buildings; disconnecting and breaking of heating conduits and plumbing throughout the buildings.
The insurance policy was in the standard form of the fire insurance policy under section 167 of Insurance Law with an addition of certain extended insurance as follows: “ Section 2 *271 Perils Insured Against. 3. Vandalism and malicious mischief being only wilful and malicious damage to or destruction of the described property and including damage to the building (s) covered hereunder caused by burglars.”
The foregoing liability is limited by certain subdivisions of the policy, as (a) $50 loss deductible clause; (E) for loss if the property has been vacant for 30 consecutive days immediately preceding the loss. A building in process of construction shall not be deemed vacant; (F) for loss by pilferage, theft, burglary or larceny.
A pertinent portion of the contract of sale between Romanych and Austin contained the following: “It is usually agreed between said parties that the said parties of the second part shall have possession of said premises as of the date of this contract and they shall keep the same in as good condition as they are in at the date hereof, until the said sum shall be paid as aforesaid; and if said parties of the second part shall fail to perform this contract, or any part of the same, said party of the first part shall, immediately after such a failure, have the right to declare the same void, and to retain whatever may have been paid on such contract, and all improvements that may have been made on said premises, and may consider and treat the parties of the second part as tenant holding over without permission, and may take immediate possession of the premises and remove the parties of the second part therefrom. ’ ’
The right, title and interest of the Austins, Ziehms and all others was cut off by the judgment in ejectment of December 5, 1955. At that time, the improvements made upon the property became the plaintiff’s in accordance with the written contract of the parties.
The damage done to the buildings occurred immediately after the Sheriff had given the Austins five days to vacate on July 25, 1956. This action on the part of Austin and others under his direction constituted a breach of the contract under which all improvements were to be the vendor’s upon any default in payments.
The systematic destruction and removal of fixtures from the buildings remaining upon the premises were mischievous acts. The question here is whether the acts of Austin and others constituted malicious mischief.
That the acts involved were willful is not disputed. The word “ malicious ” has a somewhat larger meaning than “ willful ”. 1 ‘ Maliciously ’ ’ means with a deliberate intention to injure. The removal of fixtures and buildings and the acts of destruction did injure the plaintiffs. The acts were willful. In order *272 to say that the acts were malicious in nature and extent, the injuries inflicted must be examined.
The Austins were being forcibly evicted from the premises. The improvements involved were erected by the Austins. The premises were not merely vacated. Everything that could be removed was removed. The attached fixtures were removed by force and in some instances, fixtures were destroyed by their very removal.
The acts were a reckless disregard of the rights of another. They were not only willful but done with a purpose to avenge the situation in which the Austins found themselves. Malicious mischief has been defined “ the wilful injury or destruction of property from ill will toward its owner or from mere wantonness ”. (Funk & Wagnall Standard Dictionary. See De Marasse v. Wolf, 140 N. Y. S. 2d 235, 238.) Malice does not necessarily mean hatred. It may be inferred from unjustifiable conduct. In a legal sense, it means a wrongful act, done intentionally, without just cause or excuse.
There is ample authority that an action of this type is maintainable. In Potter v. Bierwirth (171 App. Div. 175) the plaintiff brought an action to recover damages to a certain dwelling house, alleged to have been willfully, maliciously and wantonly inflicted thereon during the period when a contract of sale and conveyance thereof was pending between the plaintiff, as assignee of the contract, purchaser and defendants as owners and vendors. The court permitted the maintenance of the action on the authority of Van Pelt v. McGraw (4 N. Y. 110) and Worrall v. Munn (53 N. Y. 185, former appeal 38 N. Y. 137). In Worrall v. Munn (supra) the action was by a contractual vendee to recover damages for willful waste committed by the vendor during the pendency of the contract. In Van Pelt v. McGraw (supra) the action was by a mortgagee against the owner of the equity of redemption by conveyance from the mortgagors. The land was stripped by the defendant and the court held an action would lie.
It should be noted that in the afore-mentioned cases, the defendants had a legal right or equitable right to be in possession when the acts complained of were committed. The Austins were foreclosed fey the judgment of ejectment. The Sheriff of Franklin County had authority to execute the order of ejectment as soon as it was placed in his hands. The acts' committed by Austin and others could not be said to have been done under any claim of right. The Austins’ interest in the property was terminated. They had no legal or equitable right to be in possession or to dismantle, remove, and injure any of the property. *273 The action of the Austins was a complete, reckless disregard of the rights of the plaintiffs.
The record sufficiently showed that the actions of the Austins and others were malicious. In some instances, fixtures were sawed off with a hacksaw. One of the buildings referred to as Ziehm’s cottage was hauled away on skids. This building was forced out of shape by its very removal. Mr. Eomanych complained of these actions to the State police and the Justice of Peace and the District Attorney’s office, without success. The plaintiff, Eomanych, and the defendant Austin were not on speaking terms and the evidence showed that they avoided each other. They were parties to prior litigation. The damage occurred immediately after the Sheriff had given the Austins five days to vacate. The nature and extent of the damage as outlined was useless. These actions of ill will and apparent vengeance were stopped only on a warning of the Sheriff. This complete disregard of the legal rights of another and the nature and extent of the destruction involved are sufficient to substantiate a finding by this court that the actions of the Austins and those acting under their direction constituted malicious mischief.
The plaintiffs proved their damages by a showing of the cost of repair of the damaged items and the cost of replacement of articles removed. The amount claimed came to $4,373.
Of this amount, the plaintiffs failed to prove the items which represent the alleged removal of plumbing fixtures from bath and kitchen, toilet, lavatory, tub and kitchen sink and labor installing and copper piping in the amount of $340.
A judgment may be entered by the plaintiffs for $3,983, this amount being the net amount after deducting $50 under the terms of the policy with interest and costs.