CRESTHILL INDUSTRIES, INC., Appellant, v PROVIDENCE WASHINGTON INSURANCE COMPANY, Respondent.

Second Department, July 19, 1976

*David Romanoff* for appellant.

*Rein, Mound & Cotton (Arthur N. Brook* of counsel), for respondent.

SHAPIRO, J. In an action to recover on a policy of insurance for damages allegedly sustained as a result of vandalism or malicious mischief practiced upon the property of the insured, the plaintiff appeals from a judgment of the Supreme Court, Westchester County, which dismissed the complaint. We reverse, direct judgment for the plaintiff and remand to the Trial Term for the fixation of its damages. The single question to be decided is whether the damage sustained by the plaintiff is covered by the defendant's policy of insurance.

According to the stipulation of facts upon which this case was determined (see CPLR 3222), the plaintiff, Cresthill Industries, Inc., leased a portion of the ground floor of a three-story warehouse located at 289 Nepperhan Avenue, Yonkers, New York, during May, 1973, for the storage of buttons and button fixtures manufactured by it. Over the Memorial Day weekend of that year, persons described in the stipulation as "perpetrators" apparently broke into the unoccupied third floor of the warehouse, uncoupled the pipes carrying water to the bathroom fixture, carried away the fixtures and left the water running from the severed connections. It does not appear that the "perpetrators" entered the ground floor where the plaintiff's goods were stored but, eventually, the water did, in quantities sufficient to cause considerable damage to the plaintiff's buttons and button fixtures.

At the time of the occurrence the plaintiff was a policyholder with the defendant, Providence Washington Insurance Company, having obtained a policy of insurance providing coverage against fire, lightning and various other hazards, including vandalism and malicious mischief. The plaintiff's claim for compensation under the "vandalism and malicious mischief" provision was rejected by the insurer in reliance on the policy language. The subject policy provides, in pertinent part, as follows:

"This policy is also extended to insure against direct loss by the following perils as hereinafter provided  * * *

"8. Vandalism and malicious mischief, meaning only willful and malicious damage to or destruction of the property covered hereunder.  * * *

"b. This Company shall not be liable for loss—* * *

"(2) by pilferage, theft, burglary or larceny, except that this

Company shall be liable for willful damage to the building(s) covered hereunder caused by burglars".

The Trial Term dismissed the plaintiff's complaint on the ground, *inter alia,* that the loss sustained by it was an *indirect* loss, rather than a *direct* loss as provided for in the policy, because: "The eventual damage to plaintiff's property depended not only on the initial act of destruction on the third floor, but upon the volume of the flow, the manner of construction of the building, the direction of the flow and perhaps other intervening causes."

Thus, the court concluded:

"It would strain the meaning of the word 'direct' beyond any recognized understanding of it to say that the damage to plaintiff's goods was direct. The language of the policy plainly and unambiguously clarified its meaning when it said further, 'only wilful and malicious damage to or destruction of the property covered hereunder.' The wilfulness and malice in this case, as the stipulation of facts makes clear, were exerted upon plumbing fixtures, distant from and out of sight of the damaged property.

"Furthermore, the exclusion of coverage for loss by pilferage, theft, burglary or larceny, except for wilful damage to buildings, clarified the point. The origin of the causes resulting in the loss was a theft, burglary and larceny. The exclusion of coverage for such causes applies except in cases where burglaries damage a building.

"The facts are clear that there was no wilful or malicious damage to or destruction of the plaintiff's property. The terms of the policy are sufficiently plain and unambiguous that strict construction against the insurer is not applicable."

The defendant contends that the trial court's determination was proper because (1) the loss was not brought about as the result of vandalism or malicious mischief practiced against the property of the insured and therefore was not a "direct loss", (2) the "intent" of the "perpetrators" was never to damage the plaintiff's property, but solely to steal piping and fixtures from the third floor of the building (thus negating any claim of "vandalism" or "malicious mischief" as defined in the policy), (3) the specific "cause" of the loss was neither vandalism nor malicious mischief, but a remote burglary and theft, and (4) the policy, as written, "excludes liability for loss[es] caused by 'theft, burglary or larceny' with a single exception relating solely to 'damage to the *buildings covered hereunder* caused

by burglars'" (defendant's emphasis). Since no claim for damage to the buildings has been made (the plaintiff is not the owner of the building, nor is the building covered under the subject policy), the defendant contends that there is *no* coverage for *any* of the losses sustained.

The plaintiff, of course, argues to the contrary, stating, in effect, that (1) the "cause" of the damage was the severance of the pipes and fixtures *prior* to their removal, (2) such severance constituted an act of vandalism or malicious mischief within the policy definition and (3) the flow of water engendered thereby resulted in a "direct" (as opposed to "consequential") "loss" to property insured under the policy. Moreover, the plaintiff contends, the theft of the pipes and fixtures after their severance would not trigger the so-called "exclusionary" clause (excluding losses through "pilferage, theft, burglary or larceny") since the acts of vandalism or malicious mischief occurred prior thereto. Finally, it is the plaintiff's contention that the exclusionary clause is unclear as written, and that any ambiguity must be resolved *against* the insurer and in favor of it.

There is no controlling New York precedent and the decisions of other States are not uniform in their approach. However, we are of the opinion that the sounder authorities point to a recovery by the plaintiff.

In *Beauty Supplies v Hanover Ins. Co.* (526 SW2d 75, 76 [Mo.]), upon which the plaintiff chiefly relies, the intermediate appellate court in Missouri found coverage upon a state of facts strikingly similar to those here present:

"[Plaintiff] insured was a tenant occupying the ground floor of * * * [a warehouse] building located * * * in the City of St. Louis. The building in which [the] insured's property was located was not covered by * * * [the] policies [in dispute]. On [May 20, 1970] * * * unauthorized persons entered the vacant second floor of the building, which was not rented to or occupied by [the] insured, and stole plumbing fixtures therefrom by tearing them out of the walls and flooring of the second floor, breaking them loose from the connected water pipes, thereby permitting water to flow continuously over the floor of the second story, from whence the water leaked and came down though the ceiling of the first floor occupied by [the] insured, damaging [its] * * * goods, wares and merchandise in the sum of $14,388.90". The insured thereupon made claim against its insurer, which disclaimed coverage on the

ground "that the loss was the direct and proximate result of the acts of thieves and burglars, and since the vandalism endorsement [of the plaintiff's 'contents' policy] *excludes* liability for loss[es] caused by theft or burglary the loss is not covered [thereby]" *(supra,* p 76; emphasis supplied). The plaintiff was successful and, on appeal, the judgment in its favor was affirmed. The policy there in suit was identical (insofar as is here pertinent) with the policy at bar.

The court there wrote (pp 76-78):

"This is a question of proximate cause. While the means and method by which the unauthorized persons entered the building are not disclosed by the stipulation of facts, we assume there was a sufficient breaking to constitute a burglary. What happened, then, was (1) a burglary, (2) acts of vandalism, *Romanych v. Liverpool & London & Globe Ins. Co.,* 8 Misc 2d 269, 167 N.Y.S.2d 398, 402, and (3) a theft. *In our view the loss was directly caused by acts of vandalism, a specifically covered risk, notwithstanding a peril expressly excluded* (burglary) *was an antecedent contributing circumstance, and another peril expressly excluded* (theft) *was an independent concurring cause.*

*"The burglary is not a factor in determining the proximate cause of the damage from water leakage.* 'An antecedent contributing circumstance is generally ignored in determining the proximate cause. That is to say, a situation which merely sets the stage for the later event is not regarded as being the proximate cause merely because it made possible the subsequent loss. For example, the explosion of gas, and not the lighting of a match, is the proximate cause of loss, where the explosion is caused by the lighting of a match in a room filled with gas. Likewise, the destruction of a plateglass window, shattered when gas exploded upon its ignition by a lighted match being used to locate a gas leak, is by explosion, and not by fire, within an exception in a policy insuring the window against loss by fire.' 18 Couch on Insurance 2d § 74:714, p. 618. * * *

*"Nor is the theft a controlling factor.* If the theft be considered as a concurring cause of the loss, it was not the predominating, efficient one. The stealing and carrying away of the plumbing fixtures, after their severance, did not cause the damage to the goods of the insured. To the extent that the taking was concomitant with the vandalism, that element of stealing was a concurrent cause of the loss, but '* * * when

there are two concurrent causes of a loss, the predominating, efficient one must be regarded as the proximate [cause], * * *' *Howard Ins. Co. v. Norwich & N. Y. Trans. Co.,* 12 Wall. 194, 20 L. Ed. 378 (1870). * * *

* * *

"*We conclude that the burglary was an antecedent contributing circumstance but not a proximate cause; that the theft, while a concurrent cause, was not the predominating, efficient cause; that the proximate cause of the loss was the vandalism, a specifically insured risk.* Accordingly the judgment is affirmed (emphasis supplied).

In *Parnell v Rohrer Chevrolet Co.* (95 NJ Super 471), the court held that the carrying-away by miscreants of parts "stripped" from an insured automobile did not change the essential character of their act from one of "vandalism" to "theft", and that the car's owner *could* recover under a policy of insurance insuring against "loss to an automobile caused by riot, civil commotion, malicious mischief *or vandalism" (supra,* pp 479, 481; emphasis supplied). Said the court (p 481):

"We are not here called upon to decide whether there would be liability under this policy if a spare tire were removed from the trunk of the car, or a cigar lighter from the dashboard. The issue here is whether, when a car is stripped by miscreants of practically every component which goes into its function as a self-propelled vehicle, many other portions of it damaged substantially, and the remnant left is a useless shell, the resulting condition of the chattel, for which the insured is liable in damages to the owner, is not still fairly to be deemed a covered loss by vandalism notwithstanding that after the stripping the vandals trucked some of the parts away. Our answer to this question must be in the affirmative within the fundamental precepts for construction of insurance policies cited above by which we must be guided.

"Had the removed parts of this car been strewn along the ground rather than carted off the insurance company would be without an argument. But in that state of facts the condition of the remnant of the car itself (before repair) would be no different in any regard from that in which it was actually here left * * *. The fact that the availability of the ripped-out parts would, as to the case supposed, lessen the cost of repair, is irrelevant to the issue of coverage. *As well stated by Judge Rizzi below, 'The finding of an act of vandalism is entirely consistent with a finding of a subsequent theft after the act of*

*vandalism has been completed.'* If the insurer desires not to be liable in such circumstances, it must express its intent to that effect in the policy so plainly that it cannot be misunderstood" (emphasis supplied). However, it should be noted that, under the policy there in suit, there was no specific exclusion for losses resulting from theft, and that the argument of the insurer was simply that the existence of a provision obligating the company to pay losses arising from the "theft of the entire automobile" implied an intent *"not* to be liable under the vandalism clause for loss[es] due to [the] thefts of parts" *(supra,* p 479; emphasis supplied).

In *Hatley v Truck Ins. Exch.* (261 Ore 606, rehearing den 261 Ore 606), recovery was permitted under a policy of property insurance which contained a vandalism and malicious mischief indorsement, but which excluded losses caused by surface water and water below the surface of the ground, where, during the night, unknown persons took a hose lying near the plaintiff's building, turned it on "full force" and placed it near the base of the building, at the bottom of a sloping area, thus causing considerable water damage therein. The court there stated (p 620): "Where the act of vandalism or malicious mischief consists of turning water against the building, and where there is water damage as a direct and immediate result of that act, the general policy exclusion for certain types of water damage does not apply".

Other cases holding to the same effect are *Allstate Ins. Co. v Coin-O-Mat* (202 So 2d 598 [Fla.] [loss suffered when persons entered a laundromat owned by the insured and severely damaged 12 washing machines, held *not excepted* from policy covering direct loss to property through vandalism or malicious mischief despite clause excluding loss by theft or burglary *even though* it might have occurred during the course of an actual or attempted theft or burglary]); *Lanza Enterprises v Continental Ins. Co.* (142 So 2d 580 [La.] [recovery permitted under a vandalism and malicious mischief indorsement where, over a week-end, unknown persons turned on a water faucet leading, by hose, to the fourth floor of a building under construction, thereby causing substantial water damage]); and *General Accident Fire & Life Assur. Corp. v Azar* (103 Ga. App. 215 [damages resulting from leakage through plaintiff's roof held compensable under vandalism and malicious mischief indorsement, where damage to the roof itself was caused by children throwing rocks]. Cf. *United States Fid. & Guar.*

*Co. v Bimco Iron & Metal Corp.,* 464 SW2d 353 [Tex.]; *State Auto. Mut. Ins. Co. v Trautwein,* 414 SW2d 587 [Ky.], distinguishing *Frisbie v Fidelity Cas. Co.,* 133 Mo. App. 30 [recovery for the destruction of plate glass windows *denied,* where the policy in question excluded compensation for loss by fire, and the facts revealed that the insured's building was voluntarily "dynamited" to halt the spread of fire in block of row houses; the court stated that the *"causa causans"* of the loss was the fire itself, and that "the dynamiting of plaintiff's building was one of its natural and necessary results, not an independent, supervening cause"].)

There is, however, authority to the contrary (see *Pacific Ind. Co. v N.A., Inc.,* 120 Ga App 793). In the *Pacific Ind.* case the court held that an insurer was *not* liable under a vandalism and malicious mischief indorsement where unknown individuals had cut or torn copper flashing from the roof of the plaintiff's building, thus inflicting substantial property damage thereto. The court stated that the removal of such flashing (which had a considerable "scrap" value) constituted an act of "theft" on the part of the perpetrators, the losses from which were specifically excluded by policy language virtually identical to that at bar.

It is clear that the reasoning and conclusion in the *Pacific Indemity* case is diametrically opposed to that of the *Beauty Supplies* and *Parnell* cases *(supra),* in both of which the prior act of "severance" was distinguished from the subsequent "carrying away" or theft.

In analyzing the cases seemingly supporting the plaintiff's position, we recognize that with the exception of the *Beauty Supplies* case *(supra),* all of the other cited cases involved acts of vandalism or malicious mischief *directed against* the property of the insured *directly,* while in our case (as in the *Beauty Supplies* case) the purported acts of vandalism, etc., were *directed against* the property of another, although the property of the insured was ultimately damaged thereby.

Applying the foregoing considerations to the case at bar, it is apparent that the present plaintiff has three major obstacles to overcome in order to establish coverage as it is incumbent upon him to show (1) the occurrence of an act of vandalism or malicious mischief within the meaning of the policy, (2) proximate cause resulting in a "direct loss" to his property and (3) the inapplicability of the cited exclusionary clause (actually, the burden of proof on the issue of "exclusion" is on

the insurer rather than upon the insured) (see *Sincoff v Liberty Mut. Fire Ins. Co.,* 11 NY2d 386, 390). We shall consider these elements *seriatim.*

Despite the protestations of the defendant to the contrary, it seems undeniably clear that there was an act of vandalism or malicious mischief committed, since the severing of the pipes and fixtures *prior* to their removal constituted a completed act of vandalism, etc., the essential character of which could not be changed by what was subsequently done with them—their removal from the premises (see *Beauty Supplies v Hanover Ins. Co.,* 526 SW2d 75, *supra; Parnell v Rohrer Chevrolet Co.,* 95 NJ Super 471, *supra;* but contra, see *Pacific Ind. Co. v N.A., Inc.,* 120 Ga App 793, *supra).* The policy, in fact, recognizes as much, as it provides at paragraph 8, subdivision b, clause (2) of section III that "[t]his Company *shall not* be liable for loss * * * by pilferage, theft, burglary or larceny, *except that* * * * [it] *shall* be liable for willful damage to the building(s) covered hereunder caused by burglars" (emphasis supplied). The foregoing is nothing if it is not a tacit recognition of the fact that burglars may, indeed, "vandalize" a building in the course of committing their misdeeds. The "sounder" view therefore seems to be that adopted in the *Beauty Supplies* and *Parnell* cases, which recognize the essential severability of the conduct involved.

Concluding, as we have, that the stipulated facts show the existence of "vandalism" or "malicious mischief", the more difficult question generated thereby is whether, in point of fact, the occurrence falls within the policy definition, as the latter restricts the meaning of "vandalism" and "malicious mischief" to include "only willful and malicious damage to or destruction of the property covered hereunder." The problem is posed by a substantial body of sister State law which holds, in effect, that the quoted language is limited to acts of destruction or intentional injury *directed against* the property of the insured (see, e.g., *Imperial Cas. & Ind. Co. of Omaha, Neb. v Terry,* 451 SW2d 303, 305 [Tex.]; *Lanza Enterprises v Continental Ins. Co.,* 142 So 2d 580, 581, *supra; Ducote v United States Fid. & Guar. Co.,* 241 La 677, 684-685; *General Acc. Fire & Life Assur. Corp. v Azar,* 103 Ga App 215, 219, *supra; Rich v United Mut. Fire Ins. Co.,* 328 Mass 133, 135), a circumstance which would preclude a finding of coverage here since the acts of vandalism were not directed against the property of the insured.

However, there is a substantial body of case law to the contrary, standing broadly for the proposition that the policy provision in dispute denotes "the wilful injury or destruction of property from ill will toward its owner *or from mere wantonness*" (see *Romanych v Liverpool & London & Globe Ins. Co.,* 8 Misc 2d 269, 272 [emphasis supplied]; see, also, *Lamb v Cheney & Son,* 227 NY 418, 422; *De Marasse v Wolf,* 140 NYS2d 235, 238; *Livaditis v American Cas. Co. of Reading, Pa.,* 117 Ga App 297; *Cruse v Government Employees Ins. Co.,* 391 SW2d 1, 4 [Mo.]; *Vort v Westbrook,* 221 Ga. 39; 5 Appleman, Insurance Law and Practice, § 3182.25, pp 588-589; cf. *Hatley v Truck Ins. Exch.,* 261 Ore 606, 615-616, *supra).* Thus, even were we unwilling to infer actual malice toward all those who might foreseeably be affected, including the plaintiff, from the act of severing the plumbing fixtures on the third floor and permitting the water to run unchecked, a finding of vandalism or malicious mischief within the policy definition could still be predicated on the existence of "wanton conduct", i.e. conduct (as here) "marked by or manifesting [a] heedless disregard of justice or of the rights * * * of others" (Webster's Third New International Dictionary [Unabridged ed., 1964], p 2575; accord *Livaditis v American Cas. Co. of Reading, Pa., supra;* 5 Appleman, Insurance Law and Practice, § 3182.25, pp 588-589; cf. Penal Law, § 145.00 *et seq.* [criminal mischief] and § 15.05, subd 3).

The first precondition being satisfied, it is submitted that the finding of "proximate" or "legal" cause is established, for once the acts of the perpetrators are deemed to be covered by the policy language, it cannot reasonably be maintained that the damage which plaintiff suffered was (as the Trial Term held) "indirect" by reason of the stated "fact" that "[t]he eventual damage to plaintiff's property depended not only on the initial act of destruction on the third floor, but upon the volume of the flow, the manner of construction of the building, the direction of the flow *and perhaps other intervening causes"* (emphasis supplied).

In our opinion, the enumerated factors do not constitute "intervening" or "supervening" causes, but rather the factual framework in which the loss occurred, and can no more be said to be "causally related" to the plaintiff's damage (in a legal sense) than may the injuries of an accident victim be said to be "causally related" to his age or the rigidity of his bones. Moreover, in the context of property insurance: "Where

a peril specifically insured against sets other causes in motion which, in an unbroken sequence and connection between the act and final loss, produces the result for which recovery is sought, the insured peril is regarded as the proximate cause of the entire loss. It is not necessarily the last act in a chain of events which is, therefore, regarded as the proximate cause, but the efficient or predominant cause which sets into the motion the chain of events producing the loss. An incidental peril outside the policy, contributing to the risk insured against, will not defeat recovery, nor may the insurer defend by showing that an earlier cause brought the loss within a peril insured against, where the insured peril was the last step prior to loss. In other words, it has been held that recovery may be allowed where the insured risk was the last step in the chain of causation set in motion by an uninsured peril, or where the insured risk itself set into operation a chain of causation in which the last step may have been an excepted risk" (5 Appleman, Insurance Law and Practice, § 3083, pp 309-311, and cases cited therein; footnotes omitted).

Turning, finally, to the question of the exclusionary language incorporated into the policy, we hold that the insurer defendant has failed to sustain its burden of proving that the construction which it seeks to place on the policy is the only one which can "fairly be placed thereon" (see *Sincoff v Liberty Mut. Fire Ins. Co.,* 11 NY2d 386, 390, *supra),* for to read the policy as the insurer would have us do would be to exclude all losses resulting from "pilferage, theft, burglary or larceny", except for those damages willfully inflicted upon the building "by burglars" during the commission of their crime. The fallacy in such a construction becomes apparent under the facts of this case, as it means, in effect, that someone in the plaintiff's stead (a mere tenant with a "contents" policy) would never recover for vandalism or malicious mischief committed *inside* the premises, as one who enters unlawfully with such an intent would be a "burglar" (see Black's Law Dictionary [4th ed], p 247), thus rendering any loss sustained, a loss resulting from an excluded "burglary".

Clearly, the parties to the contract could never have intended such an absurd result, and a construction which requires it should not be adopted. There is, however, a method of construing the exclusionary language so as to effect a reasonable result, as it may be held that the clause was intended to exclude the *theft* of the insured's personal prop-

erty from coverage, an act which is sometimes categorized as "vandalism", and at other times as "burglary"[1] (see, e.g., *Parnell v Rohrer Chevrolet Co.,* 95 NJ Super 471, *supra* [where the insurer attempted to argue that the "stripping" of an automobile by vandals constituted an act of thievery rather than vandalism]; see, also, *United States Fid. & Guar. Co. v Bimco Iron & Metal Corp.,* 464 SW2d 353, *supra* [identical language construed to exclude coverage for property *stolen* from a warehouse]; 5 Appleman, Insurance Law and Practice, § 3182.25, p 591 ["under a policy insuring against vandalism and malicious mischief but generally excluding theft losses, recovery may be had for such vandalism even though some of the property was stolen"]). As for the subsequent language specifically incorporating coverage for damage to the building committed by "burglars", this can perhaps best be explained as a recognition of the overbreadth of the preceding language, and of the essential severability of acts of antecedent vandalism and the theft. The specificity of this particular provision may simply be the result of the observed fact that during most acts of burglary, theft, etc., the only "vandalism" which would ordinarily occur would be to the building itself in the course of effecting an entry or escape (see, e.g., *United States Fid. & Guar. Co. v Bimco Iron & Metal Corp., supra; State Auto, Mut. Ins. Co. v Trautwein,* 414 SW2d 587, *supra).* In any event, the least that can be said is that the exclusionary language is ambiguous, thus rendering the defendant-insurer liable (see *Sincoff v Liberty Mut. Fire Ins. Co., supra,* p 390, and the cases cited thereat.).

The decision of the First Department in *Halsey Drug Co. v American Mfrs. Mut. Ins. Co.* (30 AD2d 946) is not inconsistent herewith, as the court there merely held that a finding of "vandalism" under the clear language of a policy insuring against vandalism and malicious mischief could not be made in the absence of any "willful or malicious intent".

Accordingly, the judgment appealed from should be reversed and the case remanded to the Supreme Court for the entry of a judgment in the plaintiff's favor, after an assessment of the damages sustained by it.[2]

---

1. Insurance against such an occurrence may be purchased separately.

2. The agreed stipulation of facts provides, in paragraph 21, that: "The issues of the amount of damage sustained by plaintiff as result of the aforesaid loss are excluded from this stipulation and are reserved for resolution after a judicial determination has been had of the issue of liability of the defendant for coverage under the aforesaid policy."

MARTUSCELLO, Acting P.J., COHALAN, DAMIANI and TITONE, JJ., concur.

Judgment of the Supreme Court, Westchester County, entered February 25, 1976, reversed, on the law, with $50 costs and disbursements, and action remanded to Trial Term for an assessment of damages and the entry of an appropriate judgment, in accordance with the opinion of Mrs. Justice SHAPIRO herein.