[No. 34921. Department Two. February 11, 1960.]

W. GLENN STONEMAN *et al., Plaintiffs,* v. WICK CONSTRUC-
TION COMPANY *et al., Respondents,* STERLING OF
AURORA, INC., *Appellant.*[1]

*Montgomery, Montgomery & Purdue* and *John D. Blank-
inship,* for appellant.

[1]Reported in 349 P. (2d) 215.

*Hullin, Ehrlichman, Carroll & Roberts (John A. Roberts, Jr.,* of counsel) and *Elliott, Lee, Carney & Thomas (Elvin P. Carney,* of counsel), for respondent Wick Construction Company.

*Venables, Ballinger & Clark,* for respondent Isaacson Iron Works.

ROSELLINI, J.—This case is before the court upon the findings of fact, which have not been challenged. Briefly, they show that the appellant intervener, Sterling of Aurora, Inc., leased certain property abutting Aurora avenue, in Seattle, from W. Glenn Stoneman, under an agreement whereby Stoneman would construct a retaining wall and fill. Stoneman submitted his proposed plan to the firm of Shannon & Wilson, engineers and soil experts, who advised him that soil conditions on the property in question might be unstable and inadequate and that soil tests would have to be made before any wall was designed for the site.

Disregarding the counsel and advice of Shannon & Wilson, Stoneman procured the services of Peter Hostmark, an engineer, who, without adequate soil tests, and without knowledge of the opinion of Shannon & Wilson, prepared plans for a retaining wall and fill, which plans were accepted by Stoneman and were approved by the building department of the city of Seattle.

Stoneman then contracted with Wick Construction Company to build the retaining wall and fill according to the plans and specifications of Peter Hostmark. Wick Construction Company subcontracted certain structural steel work to Isaacson Iron Works.

After the job was completed, ruptures and breaks began to occur. These were repaired by the respondents with the approval of Stoneman's agent, Peter Hostmark, and the city's building department.

Immediately after acceptance of the work, Stoneman delivered possession of the premises to the appellant, Sterling of Aurora, Inc., which proceeded to erect thereon a gas station building and other gas station facilities. During the progress of the work, various cracks in the fill were

noticed. Large cracks appeared in the building and in the sidewalk around it. Shortly thereafter a loud noise was heard in the structure and one of the columns supporting it leaned forward, and the asphalt paving around it settled two or three feet. Thereafter, other parts of the structure failed and started to slide downhill, and the fill and east wall were eventually unloaded and removed by the city of Seattle.

These activities and occurrences caused damages to the property below Stoneman's property, for which damages the owners were awarded judgment against Stoneman and against the respondents, Wick Construction Company and Isaacson Iron Works. No appeal has been taken from those judgments.

Sterling of Aurora, Inc., was awarded judgment against Stoneman, but its complaint against the respondents was dismissed, as was that of Stoneman. Stoneman has not appealed from that judgment of dismissal.

 The appellant, Sterling of Aurora, Inc., contends that the failure of the retaining wall was caused by the negligence of the respondents, and that, under the doctrine enunciated by this court in *Freeman v. Navarre,* 47 Wn. (2d) 760, 289 P. (2d) 1015, it is entitled to recover its damages from the respondents. We held in that case that a manufacturer may be liable to an owner of property for negligent manufacture of materials used in a construction job even though no privity of contract exists between them.

Assuming the correctness of the appellant's contention that this rule is equally applicable in the case of a contractor or subcontractor who negligently performs his contract to the injury of a third person, there is nevertheless a fatal defect in the appellant's case as it is brought to this court. The findings do not show that the respondent Wick Construction Company negligently performed its contract, nor are they clear that the respondent Isaacson Iron Works was guilty of negligence and furthermore, they do not show that any acts of the respondents were a proximate

cause of the damage. The significant findings as to the cause of the failure of the retaining wall are as follows:

"That the history of slides along the easterly portion of Queen Anne Hill, particularly the areas immediately north and south of subject property, and on Lot 4 in 1934, was such as to put reasonable engineering men on notice of the possibility of slides. That the standard of engineering practice in Seattle at the time of the proposed erection of the retaining wall was such as to require sub-soil explorations and laboratory tests on samples of soil. That the design of the wall and fill was made without adequate investigation of the assumptions upon which it was based, namely that of absolute stability. That the design for the retaining wall and fill did not conform to the standard of engineering practice for such a wall in this area in that it was designed on the basis of soil stability and on the theory that the pressure behind the fill would not exceed that of dry earth and in that no adequate provisions were made for keeping the earth dry from rain or subsurface percolating waters, or by compensating for the condition of the wet earth by appropriate design factors to retain such pressures resulting from water. That the earth became wet and developed pressures behind the wall in excess of its design strength. *That, in fact, the strength and stability of the soil under the retaining wall and fill was insufficient for the load imposed.* (Italics ours.)

"That, assuming instability of the foundations to the extent of slight vertical and horizontal movement down and easterly, which was within the standard of engineering practice for retaining walls to permit the elastic movement of soil, the design here did not permit such slight movement, and it failed to allow for the controlling of moment pressures created by any bending stresses other than those inherent in the construction of the welds and connections themselves, such as would be permitted in a chain or socket joint arrangement, as distinguished from rigidly fixed straps or bars.

"That Mr. Stoneman negligently failed to act as a reasonable man would in failing to inform Mr. Hostmark of the Shannon & Wilson report on the necessity for soil investigation.

"That Mr. Stoneman, by virtue of Peter Hostmark's approval, City approval, and inspection by the independent supervisors of Stoneman, approved the welds and splice detail, as they were shown on the Isaacson shop plans,

plaintiff's Exhibit 6, to the extent the same varied from the original design of Hostmark.

"That the proximate causes of the failure of this retaining wall were: (a) Instability of the subsurface soil to bear the structure placed on it; (b) Insufficiency of the design to contain the pressures created; and (c) Some inferior welds in the steel fabrication.

"The work required by the Wick Construction Company contract, under its contract, was substantially performed, delivered to and accepted by Stoneman.

"That plaintiff Stoneman built a structure which, due to the instability of soil and improper assumptions of design, was destined to fail, regardless of defects in welds. That had the same not failed on or about July 28, 1956, or about March 22, 1957, by reason of such defective welds, the same would have failed in close proximity to said dates. That Stoneman received what he bargained for in his contract, namely, a structure destined to fail."

There is no finding of fact on which to predicate negligence of the respondent Wick Construction Company. If it can be inferred that the inferior or defective welds were the result of negligence of the respondent Isaacson Iron Works, even though the contract was substantially performed and the welds and splice details were approved, nevertheless, the latter cannot be held liable, for there is no finding that these defects were a proximate cause of the failure of the wall and fill. The affirmative findings negative such a conclusion, for they show that the wall would have failed regardless of the inferior welds.

The proximate cause of an injury is that cause which, in a natural and continuous sequence, unbroken by any new, independent cause, produces the event, and without which that event would not have occurred. *Eckerson v. Ford's Prairie School Dist. No. 11,* 3 Wn. (2d) 475, 101 P. (2d) 345. If an event would have happened regardless of the defendant's negligence, that negligence is not a proximate cause of the event. *Van Cello v. Clark,* 157 Wash. 321, 289 Pac. 19; *Ross v. Smith & Bloxom,* 107 Wash. 493, 182 Pac. 582.

In 2 Harper and James, Law of Torts, 1110, § 20.2, it is said:

" . . . If two independent causes concur to produce a result which either of them alone would have produced, each is a cause in fact of that result though it would have happened without *either* cause (but not if *both* causes were absent). . . ."

The court found that the wall would have failed in spite of the defects in the welds; it did not find that it would have failed in spite of defects in design and soil conditions. No error has been assigned to the failure to make such a finding. We must assume, therefore, that the evidence would not support it.

Having failed to find that any negligence of the respondents was a proximate cause of the appellant's damages, the court properly dismissed its complaint.

The judgment is affirmed.

WEAVER, C. J., HILL, FINLEY, and FOSTER, JJ., concur.

---

April 25, 1960. Petition for rehearing denied.