[Nos. 47706–0, 47955–1.  En Banc.  January 6, 1983.]

RONALD GRAHAM, ET AL, *Appellants*, v. PUBLIC
EMPLOYEES MUTUAL INSURANCE COMPANY,
*Respondent.*

JOSEPH FOTHERINGILL, ET AL, *Appellants*, v.
PENNSYLVANIA GENERAL INSURANCE
COMPANY, *Respondent.*

*Walstead, Mertsching, Husemoen, Donaldson & Barlow,* by *John A. Barlow* and *Craig W. Weston,* for appellants.

*Walker, Dowell & Hunter,* by *Willard Walker* (*Bullivant, Wright, Leedy, Johnson, Pendergrass & Hoffman,* by *Douglas G. Houser, I. Franklin Hunsaker,* and *Deborah S. MacMillan,* of counsel), for respondent Public Employees Mutual Insurance Company.

*Clarke, Bovingdon & Cole,* by *Mark S. Cole,* for respondent Pennsylvania General Insurance Company.

DORE, J.—This appeal arises from a dispute which erupted between two insurance companies and their insureds following the May 18, 1980, explosion of Mount St. Helens. The early pyroclastic flows from the eruption, along with hot ash and debris, began melting the snow and ice flanking the mountain and the broken glacial ice blocks within the Toutle River valley. This water, combined with torrential rains from the eruption cloud, existing groundwater, water displaced from Spirit Lake, and ash and debris, created mudflows which began moving down the valley shortly after the eruption began. This process continued throughout the day of May 18.

At some point, a large mudflow developed in the upper reaches of the south fork of the valley from the Toutle and Talus glaciers. The mudflow gouged and filled the land into new forms as it moved, damaging or destroying many homes within its path. Approximately 10 hours after the eruption began, the appellants' homes, 20 to 25 miles away from Mount St. Helens, were destroyed by a mudflow or a combination of mudflows preceded by water damage from flooding.

At the time of the eruption, homeowners insurance policies issued by Public Employees Mutual Insurance Company (hereafter Pemco) to appellants Graham and Campbell, and a policy issued by Pennsylvania General Insurance Company (hereafter PGI) to appellants Fotheringill were in effect. All three policies provided in pertinent

part as follows:

SECTION 1—EXCLUSIONS
We do not cover loss resulting directly or indirectly from:
. . .
2. Earth Movement. Direct loss by fire, explosion, theft, or breakage of glass or safety glazing materials resulting from earth movement is covered.
3. Water damage, meaning:
    a. flood, . . .

Of the seven exclusions listed in the Pemco policy, "earth movement" is the only one not specifically defined in the policy.

Prior to March 1980, Pemco utilized insurance forms containing this exclusionary language:

This policy does not insure against loss:
. . .
2. caused by, resulting from, contributed to or aggravated by any earth movement, including but not limited to earthquake, volcanic eruption, landslide, mudflow, earth sinking, rising or shifting; unless loss by fire, explosion or breakage of glass constituting a part of the building(s) covered hereunder, including glass in storm doors and storm windows, ensues, and this Company shall then be liable only for such ensuing loss, but this exclusion does not apply to loss by theft;

This language was deleted by Pemco in an overall effort to simplify the policy language.

The homeowners filed claims against the insurance companies under their homeowners policies, but the insurance companies rejected their claims on the basis that the damage was excludable as "earth movement" in the form of mudflows or a combination of earth movement and water damage. The Grahams and Campbells then commenced this action against Pemco in Cowlitz County Superior Court. On April 10, 1981, the trial court granted Pemco's motion for summary judgment, dismissing the homeowners' complaint. Meanwhile, the Fotheringills instituted a suit against PGI in the same court. On April 29, 1981, the trial court, after hearing argument virtually identical to that of

the Graham case, granted PGI's motion for summary judgment, dismissing the Fotheringills' complaint.

For the purpose of ruling on the summary judgment motion, the trial court assumed the movement of Mount St. Helens to be an "explosion" within the terms of the insurance policies. The trial court noted this issue was a factual issue to be determined by a jury. We agree, as the true meaning of "explosion" in each case must be settled by the common experience of jurors. *Oroville Cordell Fruit Growers, Inc. v. Minneapolis Fire & Marine Ins. Co.,* 68 Wn.2d 117, 122, 411 P.2d 873 (1966). Because direct loss from an explosion resulting from earth movement is not excluded from coverage, the jury must also determine the factual issue of whether the earth movements were caused by the earthquakes and harmonic tremors which preceded the eruption.

If the jury determines the volcanic eruption was an explosion resulting from earth movement, it will then be necessary to reach the issue of whether the loss was a direct result of the eruption. The trial court held that the causation analysis of *Bruener v. Twin City Fire Ins. Co.,* 37 Wn.2d 181, 222 P.2d 833, 23 A.L.R.2d 385 (1950) precluded the plaintiffs' claims.

In *Bruener,* the insured's vehicle skidded on icy pavement and collided with an embankment. The insurance policy contained a collision exclusion to the comprehensive coverage. This court held that the loss was a "collision" for insurance purposes, reasoning as follows at pages 183–84:

> In tort cases, the rules of proximate cause are applied for the single purpose of fixing culpability, with which insurance cases are not concerned. For that purpose, the tort rules of proximate cause reach back of both the injury and the physical cause to fix the blame on those who created the situation in which the physical laws of nature operated. The happening of an accident does not, in itself, establish negligence and tort liability. The question is always, why did the injury occur. Insurance cases are not concerned with why the injury occurred or the

question of culpability, but only with the nature of the injury and how it happened.

The *Bruener* court expressly overruled *Ploe v. International Indem. Co.,* 128 Wash. 480, 223 P. 327, 35 A.L.R. 999 (1924), a case involving a driver who lost control of an automobile while rounding a curve on a mountain road. The car left the highway and traveled 25 feet before striking a stump along the road. Holding that the insurer was not liable, the court characterized the proximate cause of the accident to be the skidding of the car and not the collision with the stump. *Ploe,* at 483. The court reasoned that the destruction of the car was imminent from the time it left the highway, whether it struck the stump or not. In overruling the *Ploe* decision, the *Bruener* court, at page 185, replaced this proximate cause analysis with one of "direct, violent and efficient cause".

In *Dickson v. United States Fid. & Guar. Co.,* 77 Wn.2d 785, 466 P.2d 515 (1970), the plaintiff's boom crane was insured under a policy which excluded coverage for latent defects. The boom crane was damaged when earth, collapsing onto an "H" beam that was being removed, caused a sudden stoppage of the hoist. This stoppage put an increase in load on the boom structure, causing a defective weld to break and the boom to collapse. This court affirmed the trial court's ruling that the earth collapse was the external and responsible cause of the failure of the weld and the collapse of the boom, stating at page 793:

> The trial court regarded the collapsing earth as the external and responsible cause of the failure of the weld and the collapse of the boom. He did not thereby rule in contradiction to our rule on insurance causation, as set forth in *Bruener v. Twin City Fire Ins. Co.,* [37 Wn.2d 181, 222 P.2d 833, 23 A.L.R.2d 385 (1950)] wherein we stated that, for the purposes of insurance litigation, the responsible cause of a loss is that which is the "direct, violent and efficient cause of the damage."

In reviewing the foregoing cases, we conclude the immediate physical cause analysis is no longer appropriate and should be discarded. The *Bruener* rule is an anomaly,

inconsistent with the rule in the majority of other jurisdictions.[1] We have defined "proximate cause" as that cause "which, in a natural and continuous sequence, unbroken by any new, independent cause, produces the event, and without which that event would not have occurred". *Stoneman v. Wick Constr. Co.*, 55 Wn.2d 639, 643, 349 P.2d 215 (1960). Where a peril specifically insured against sets other causes in motion which, in an unbroken sequence and connection between the act and final loss, produce the result for which recovery is sought, the insured peril is regarded as the "proximate cause" of the entire loss. *Franklin Packaging Co. v. California Union Ins. Co.*, 171 N.J. Super. 188, 408 A.2d 448, 449 (1979), quoting 5 J. Appleman, *Insurance* § 3083, at 309–11 (1970). *See also Gowans v. Northwestern Pac. Indem. Co.*, 260 Or. 618, 489 P.2d 947, 46 A.L.R.3d 398, *reh'g denied,* 260 Or. 618, 491 P.2d 1178 (1971); *Cresthill Indus., Inc. v. Providence Wash. Ins. Co.*, 53 A.D.2d 488, 385 N.Y.S.2d 797 (1976); 43 Am. Jur. 2d *Insurance* § 1182 (1969).

It is the efficient or predominant cause which sets into motion the chain of events producing the loss which is regarded as the proximate cause, not necessarily the last act in a chain of events. *Dickson,* at 794; 5 J. Appleman, *supra* at 309–11; *Frontis v. Milwaukee Ins. Co.*, 156 Conn. 492, 242 A.2d 749, 753 (1968); 43 Am. Jur. 2d, *supra* at § 1182. The mechanical simplicity of the *Bruener* rule does not allow inquiry into the intent and expectations of the parties to the insurance contract. *Sears, Roebuck & Co. v. Hartford Accident & Indem. Co.*, 50 Wn.2d 443, 313 P.2d 347 (1957). We now specifically overrule the *Bruener* case.[2]

---

[1] 18 G. Couch, *Insurance* § 74:693 (2d ed. 1968) states the majority rule as:
"When loss is sustained by the insured it is necessary that the loss be proximately, rather than remotely, caused by the peril insured against."

[2] In *Frontier Lanes v. Canadian Indem. Co.*, 26 Wn. App. 342, 346, 613 P.2d 166 (1980), the Court of Appeals read *Bruener v. Twin City Fire Ins. Co.*, 37 Wn.2d 181, 222 P.2d 833, 23 A.L.R.3d 385 (1950) to require that a loss could be attributed to vandalism or malicious mischief only if "the immediate physical cause of that loss was the vandalistic or malicious act itself or an instrumentality

The determination of proximate cause is well established in this state. As a general rule, the question of proximate cause is for the jury, and it is only when the facts are undisputed and the inferences therefrom are plain and incapable of reasonable doubt or difference of opinion that it may be a question of law for the court. *Bordynoski v. Bergner*, 97 Wn.2d 335, 644 P.2d 1173 (1982); *Smith v. Acme Paving Co.*, 16 Wn. App. 389, 558 P.2d 811 (1976); *Mathers v. Stephens*, 22 Wn.2d 364, 370, 156 P.2d 227 (1945).

In the present case, the mudflows which destroyed the appellants' homes would not have occurred without the eruption of Mount St. Helens. The eruption displaced water from Spirit Lake, and set into motion the melting of the snow and ice flanking the mountain. A jury could reasonably determine the water displacement, melting snow and ice and mudflows were mere manifestations of the eruption, finding that the eruption of Mount St. Helens was the proximate cause of the damage to appellants' homes. This issue is not a question of law but a question of fact, to be determined by the trier of facts.

## CONCLUSION

The *Bruener* decision is hereby overruled. We remand to the trial court for a jury determination of whether the movement of Mount St. Helens was an "explosion" within the terms of the insurance policies; whether that "explosion" was preceded by earth movement, and whether appellants' damages were proximately caused by the eruption of Mount St. Helens on May 18, 1980.

ROSELLINI, STAFFORD, UTTER, WILLIAMS, and PEARSON, JJ., concur.

---

employed directly by the wrongdoer to carry out that act". We decline to follow the *Frontier* analysis insofar as it is inconsistent with our holding in the present case.

BRACHTENBACH, C.J. (dissenting)—In its ardour to explain the relationship of proximate cause to insurance law the majority strays from the basic issues presented by this case. First, what are the express terms of the policy? Second, are any of those terms ambiguous? Third, if the terms of the policy are unambiguous, would application of those terms result in coverage? The majority fails to apply such a step by step analysis. Consequently, it neglects a clear provision of the policy that requires that we affirm the trial court's grant of summary judgment. I therefore dissent.

This court has long recognized that insurance policies are private contracts. *See Sears, Roebuck & Co. v. Hartford Accident & Indem. Co.*, 50 Wn.2d 443, 449, 313 P.2d 347 (1957). As a private contractor, the insurer is ordinarily permitted to limit its liability unless inconsistent with public policy or some statutory provision. *Mutual of Enumclaw Ins. Co. v. Wiscomb*, 97 Wn.2d 203, 210, 643 P.2d 441 (1982). Thus the court's initial task here is to identify fully the terms of this contract. Here the homeowner's policy provided for coverage against, *inter alia*, fire and explosion. In addition, however, the policy contained an exclusion for earth movement which in turn contained its own exception. That exclusion and exception provide:

> We do not cover loss resulting directly or indirectly from:
> 2. Earth movement. Direct loss by fire, explosion, theft, or breakage of glass or safety glazing materials resulting from earth movement is covered.

The next step is to determine whether any of these provisions are ambiguous. Although this issue was raised by the parties the majority chooses to ignore it and proceeds instead to analyze the case as if it were a question of proximate cause. It then determines that that issue is a question of fact for the jury and reverses summary judgment.

The obvious flaw in the majority's opinion is that it improperly applies the terms of the policy to the chain of events. The facts of this case reveal the following possible

chain of events which should result in a denial of coverage regardless of proximate cause analysis. As suggested by the majority, on May 18, 1980, earthquakes and moving lava caused earth to move, which caused an eruption (explosion?), which caused earth movement in the form of mudflows. The majority concludes that the exclusion operates to exclude the initial earth movement which preceded the eruption but that the exception for explosion contained in the exclusion brings the incident back within the potential terms of the policy. But if that result is correct, the majority neglects a necessary additional inquiry—that is—should the earth movement exclusion be applied a second time to exclude coverage for mudflows? This last question presents strictly a legal issue involving the proper interpretation of policy terms. I submit that the only logical resolution of this issue is that the earth movement exclusion must be considered a second time. This answer requires, unfortunately, that we deny coverage. To do otherwise, however, would be to use proximate cause analysis to circumvent the clear terms of the policy. In addition, the majority appears to stop its inquiry at a point on the causation chain where coverage would be provided. The majority's analysis requires that we ignore clear provisions in the insurance contract. This we cannot do. As we have said in the past:

> Since an insurance policy is merely a written contract between an insurer and the insured, courts cannot rule out of the contract any language which the parties thereto have put into it; cannot revise the contract under the theory of construing it; and neither abstract justice nor any rule of construction can create a contract for the parties which they did not make for themselves.

*Sears, Roebuck & Co. v. Hartford Accident & Indem. Co.,* 50 Wn.2d 443, 449, 313 P.2d 347 (1957).

The interpretation I suggest is necessary to give effect to the expectations that the parties had at the time they contracted for insurance coverage.[3] I would therefore deny cov-

---

[3]The fact that the Grahams made a claim and recovered under their Federal Flood Insurance policy for this damage demonstrates that they at least viewed the

erage and affirm the trial court.

DOLLIVER and DIMMICK, JJ., concur with BRACHTENBACH, C.J.

Reconsideration denied February 10, 1983.

primary cause of the damage as unrelated to the explosion. Transcript of Proceedings, at 43.