64 Wn. App. 83 (1991)
823 P.2d 1112
THE CITY OF EVERETT, Appellant,
v.
AMERICAN EMPIRE SURPLUS LINES INSURANCE COMPANY, Respondent.
No. 27784-7-I.
The Court of Appeals of Washington, Division One.
December 23, 1991.
Robert L. Christie, Pamela M. Andrews, and Waitt, Johnson & Martens, for appellant.
Warren E. Babb, Jr., and Lane Powell Spears Lubersky, for respondent.
PEKELIS, J.
The City of Everett sought a declaratory judgment that the claims asserted in a wrongful death suit filed against the City were covered under a policy issued by *85 American Empire Surplus Lines Insurance Company. The trial court granted summary judgment in favor of American, determining that two exclusionary clauses in the policy applied. We affirm.

I
On October 26, 1988, the wife of Everett fire fighter Gary L. Parks filed a claim with the City for damages stemming from Parks' death while fighting a fire at Everett Community College. The claim alleged that the City was negligent "in the manner in which Parks and other firefighters were directed and allowed to fight the fire, the manner in which they were equipped and the manner in which they were trained."
On January 25, 1989, the City notified American of the Parks claim pursuant to a Municipality and Governmental Authorities Errors and Omissions Insurance Policy issued by American. The policy provided coverage for "all loss" from any claim or suit for wrongful acts made against the City during the policy period. "Loss" is defined as "any amount" that the insured is obligated to pay a claimant and includes but is not limited to "damages, judgments, settlements and costs, cost of investigation and defense of legal actions ... claims and proceedings, and appeals therefrom".
In a letter dated February 20, 1989, American denied coverage for the Parks claim asserting that two separate exclusionary clauses in the policy applied. The relevant policy provisions state:
This insurance does not apply to and the Company shall not be liable to make any payment in connection with any claim made or suit brought against the insured based upon or arising out of the following:
....
6. Any damages, whether direct, indirect or consequential, arising from, or caused by, bodily injury, personal injury, sickness, disease or death, or loss or criminal abstraction of, or from damage to or destruction of any tangible property including the loss of use thereof;
....
14. Relating to employment practices and procedures including but not limited to employment hiring, advancement, *86 remuneration, termination of employment or labor negotiations.
(Italics ours.) American also denied coverage on the basis that the City had prior knowledge of the Parks claim which it failed to disclose in violation of a provision in the insurance application form that "[n]o fact, circumstance or situation indicating the probability of a claim or action is now known to any Public Official or Employee".
On September 25, 1989, Ms. Parks filed a wrongful death action against Everett in superior court asserting allegations identical to those in her claim. When American again denied coverage, the City brought a declaratory judgment action against American, seeking an order establishing American's duty to indemnify the City for all expenses incurred in its defense against the Parks action, including settlements, judgments, costs, and legal fees.
Both the City and American moved for summary judgment. American reiterated its position that exclusions 6 and 14 precluded coverage for the Parks claim and that the City had prior knowledge of the Parks claim. In support of its motion, American submitted the declaration of Robert Nelson, a senior vice-president and underwriter with American. Nelson explained that, unlike a general liability policy, an errors and omissions (E&O) policy is not designed to cover claims for negligent acts of city employees that result in bodily injury or death. Instead, an E&O policy is intended to insure municipal bodies against third party claims for misfeasance and malfeasance of public officers which result in financial loss. Nelson then described several instances where American has paid claims for misfeasance and malfeasance pursuant to E&O policies identical to the Everett policy.
At the hearing on summary judgment, the trial court rejected American's prior knowledge argument. The court did, however, grant American's motion for summary judgment concluding that both exclusions 6 and 14 precluded coverage.

*87 II
On appeal, the City contends that neither exclusion 6 nor 14 applies here to preclude coverage. American cross-appeals from the trial court's rejection of its contention that the City's prior knowledge of the potential claim is an additional basis to deny the City coverage.
[1] On review of a summary judgment, the appellate court places itself in the position of the trial court and, considering the evidence in the light most favorable to the nonmoving party, must assess whether "the pleadings, depositions ... and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Del Guzzi Constr. Co. v. Global Northwest Ltd., 105 Wn.2d 878, 882, 719 P.2d 120 (1986) (quoting CR 56(c)).
[2] An insurance policy should be given a fair, reasonable, and sensible construction consonant with the apparent object and intent of the parties. Sears v. Grange Ins. Ass'n, 111 Wn.2d 636, 638, 762 P.2d 1141 (1988); Morgan v. Prudential Ins. Co. of Am., 86 Wn.2d 432, 434, 545 P.2d 1193 (1976). If the policy language is clear and unambiguous, the court may not modify the contract or create an ambiguity where none exists. Morgan, 86 Wn.2d at 434; see also Avemco Ins. Co. v. Mock, 44 Wn. App. 327, 329, 721 P.2d 34 (1986).
We address first the City's claim that exclusion 6 does not apply to the nondamage expenses listed in the coverage portion of the policy. The City makes a number of arguments. First, it points out that the E&O policy provides coverage for "all loss", and loss includes not only damages, but also "judgments, settlements and costs, cost of investigation and defense of legal actions ... and appeals therefrom". Thus, the City claims that exclusion 6's bar on "damages ... arising from, or caused by ... death" does not apply to these "nondamage" types of losses.
[3] We reject this interpretation. The exclusion must be read in context with the introductory language which *88 precedes it. When this is done, it is clear that the policy excludes "any payment in connection with any claim made or suit brought" for "damages ... arising from, or caused by, bodily injury, personal injury, sickness, disease or death". (Italics ours.) Because the underlying action specifically alleges damages arising from Gary Parks' death, the City is not entitled under the policy to any payment incurred in putting on a defense to this claim, including settlements, costs, or attorney's fees.
[4] The City next argues that if exclusion 6 is held to apply, the policy provides no coverage at all. This argument is without merit. As the Nelson declaration plainly demonstrates, American has provided coverage under identical E&O policies for a variety of wrongful acts by public officials.[1] Thus, although the policy is not one of general liability, neither is its coverage nugatory. Foreman v. Continental Cas. Co., 770 F.2d 487, 489 (5th Cir.1985).
Finally, the City argues that because there is a question of fact as to whether its own negligent supervision, training and equipping of Gary Parks or Parks' death proximately caused the claimed damages, the "efficient proximate cause" rule precludes summary judgment under exclusion 6. The City relies on Safeco Ins. Co. of Am. v. Hirschmann, 112 Wn.2d 621, 773 P.2d 413 (1989) and Graham v. Public Employees Mut. Ins. Co., 98 Wn.2d 533, 656 P.2d 1077 (1983). Hirschmann and Graham involved the application and interpretation of language in homeowners' insurance policies which excluded losses resulting from or caused by earth movement. In each case, the court was faced with exclusionary language which required it to apply the "efficient proximate cause" rule of all-risk homeowners insurance coverage. This rule states that "where an insured risk itself sets into operation a chain of causation in which the *89 last step may have been an [excluded] risk, the [excluded] risk will not defeat recovery.'" (Italics omitted.) Hirschmann, 112 Wn.2d at 626 (quoting Villella v. Public Employees Mut. Ins. Co., 106 Wn.2d 806, 815, 725 P.2d 957 (1986)).
[5] Recently, in Toll Bridge Auth. v. Aetna Ins. Co., 54 Wn. App. 400, 773 P.2d 906 (1989), this court held that the rule followed in Hirschmann[2] and Graham did not apply to exclusionary language in a ferry terminal facilities policy which used the phrase "arising out of". Noting that the phrase was unambiguous and had a broader meaning than "caused by" or "resulted from", the court concluded that the efficient proximate cause rule did not apply. The court reasoned that a determination of proximate cause was not necessary to a determination of coverage under the policy. Toll Bridge Auth., 54 Wn. App. at 404, 407.
The language of the E&O policy at issue here precludes coverage for "any damages, whether direct, indirect or consequential, arising from, or caused by ... death". Although the policy uses the same "caused by" language present in Hirschmann and Graham, it also, as in Toll Bridge, uses the "arising from" language which renders a proximate cause analysis unnecessary. In conformance with our opinion in Toll Bridge, we conclude that "arising from" implies something broader than causation. The phrase is "ordinarily understood to mean `originating from', `having its origin in', `growing out of', or `flowing from'." Toll Bridge Auth., 54 Wn. App. at 404 (quoting Avemco Ins. Co. v. Mock, 44 Wn. App. 327, 329, 721 P.2d 34 (1986)).
In this case, the damage claim being asserted indisputably "arises from" Gary Parks' death. Indeed, the very existence of Ms. Parks negligence action depends upon the fatal injury sustained by her husband. Accordingly, we hold that coverage for the Parks claim is precluded by exclusion 6. Since summary judgment in favor of American is sustainable *90 on this basis, we do not reach the issue of whether exclusion 14 would bar coverage or the issue raised in American's cross appeal concerning the City's alleged prior knowledge of the Parks claim.
Affirmed.
SCHOLFIELD and AGID, JJ., concur.
NOTES
[1] Contrary to the City's contention, the Nelson declaration does not constitute improper parol evidence. The declaration properly rebuts the City's claim that applying exclusion 6 here would gut the policy and is not used to show an intention independent of the written contract. See generally Berg v. Hudesman, 115 Wn.2d 657, 801 P.2d 222 (1990).
[2] See this court's opinion in Safeco Ins. Co. of Am. v. Hirschmann, 52 Wn. App. 469, 760 P.2d 969 (1988), aff'd, 112 Wn.2d 621, 773 P.2d 413 (1989).