Clinton R. CHURCHILL, David A. Heenan, Richard W. Gushman II, and Ronald J. Zlatoper, Trustees Under the Will and of the Estate of James Campbell, Deceased, Acting in Their Fiduciary and Not Individual Capacities, Plaintiffs,

v.

FACTORY MUTUAL INSURANCE COMPANY, a/k/a FM Global, as successor in interest to Arkwright Mutual Insurance Company; and Does 1 through 5, Defendants.

No. C02–387Z.

United States District Court,
W.D. Washington
at Seattle.

Oct. 23, 2002.

Trustees for the Estate of James Campbell against Defendant Factory Mutual Insurance Co. ("FM"), for mold and water intrusion damage at the Alderwood Plaza Shopping Center in Lynnwood, WA ("Alderwood"). Alderwood is insured for property damage by an insurance policy issued by Defendant to the Estate of James Campbell ("the Estate"). *See* Ex. D to Friedman Decl., docket no. 50.

FM's insurance policy provided coverage to the Estate between September 1, 1995, to September 1, 2000. Ex. D to Friedman Decl., docket no. 50, at 1. The policy states that it insures against: "ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded, to the property described hereinafter." *Id.* The policy is FM's standard "Form 3000." The policy does not contain any exclusion containing the words or phrases "mold," "seepage," "water damage," "leakage," or "wet or dry rot." *See* Ex. D to Friedman Decl., docket no. 50; Ex. F to Friedman Decl., docket no. 50, at Responses to Requests for Admission nos. 12–16.

FM's prior all-risk policy, the Form 2000, which was the predecessor of the Form 3000 policy sold to the Estate, contained an express exclusion for "mold, wet and dry rot." *See* Ex. J to Friedman Decl., docket no. 50, at 99–103 (testimony regarding Form 2000; actual document not produced by Defendant). FM has reinserted a mold exclusion into its current standard all-risk policy, the Global Advantage 2002. *See* Ex. H to Friedman Decl., docket no. 50, at 262; Ex. G to Friedman Decl., docket no. 50, at 59 (testimony regarding Global Advantage policy; actual document not produced by Defendant).

The Estate purchased the Alderwood Plaza Shopping Center in December 1987. Ex. 1 to Req. for Judicial Notice, docket no. 49, ¶ 6 (Roberson Decl.). In August

Timothy G. Leyh, Danielson Harrigan & Tollefson, Seattle, WA, Amy B. Briggs, Arthur J. Friedman, Steefel, Levitt & Weiss, San Francisco, Ca, Robert A. Zeavin, Steefel Levett & Weiss, Los Angeles, CA, for Plaintiff.

Michael K. McCormack, Scott M. Stickney, Bullivant, Houser, Bailey, Seattle, WA, for Defendants.

## ORDER

ZILLY, District Judge.

This matter comes before the Court on Plaintiff the Estate of James Campbell's motion for partial summary judgment, docket no. 48. The Court GRANTS IN PART and DENIES IN PART Plaintiff's motion for partial summary judgment, docket no. 48.

## BACKGROUND

This case arises out of an insurance claim made by Plaintiffs Clinton R. Churchill, David A. Heenan, Richard W. Gushman II, and Ronald J. Zlatoper,

2000, a tenant commented that her store had a moldy odor. *Id.* ¶ 7. The Estate became aware of the presence of mold in November 2000 after an investigation regarding the tenant's complaint. *Id.* ¶¶ 7–9. The Estate gave FM notice of the claim by letter on March 2, 2001. *Id.* ¶ 9. On July 17, 2001, the Estate submitted its first "Water Damage and Mold Remediation Claim,"and sought payment from FM. *See* Ex. 2 to Req. for Judicial Notice, docket no. 49, ¶ 21 (Ritter Decl.).

The Estate filed the present action on February 15, 2002. Plaintiff brings claims for Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, Tortious Breach of the Covenant of Good Faith and Fair Dealing, Declaratory Relief, and Unfair and Deceptive Business Practices. FM's Answer asserts that several policy exclusions bar coverage of the Estate's claim.

Plaintiff seeks partial summary judgment on three grounds. First, the Estate seeks dismissal of FM's affirmative defenses to coverage based on its policy exclusions. Second, the Estate seeks dismissal of FM's "late notice" defense in paragraph 74 of its Answer. Finally, the Estate seeks dismissal of FM's sole counterclaim alleging that the Estate breached the parties' Stipulated Protective Order Re: Confidentiality of Discovery Materials ("Protective Order") entered in the previous Market on the Lake action involving similar claims for damage to property in California.

## ANALYSIS

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, the opposing party must show that there is a genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.,* 952 F.2d 1551, 1558 (9th Cir.1991). For purposes of the motion, reasonable doubts as to the existence of material facts are resolved against the moving party and inferences are drawn in the light most favorable to the opposing party. *Addisu v. Fred Meyer, Inc.,* 198 F.3d 1130, 1134 (9th Cir.2000).

### I. *Affirmative Defenses Based on Exclusions to Coverage*

■ To determine whether coverage exists under an insurance policy, the Court must apply a two-step process. First, the insured must show that the loss falls within the scope of the policy's insured losses. *McDonald v. State Farm Fire & Cas. Co.,* 119 Wash.2d 724, 731, 837 P.2d 1000 (1992). Second, to avoid coverage the insurer must show that specific policy language excludes the loss. *Id.*

### A. *Efficient Proximate Cause Doctrine*

■ The Court cannot resolve the question of coverage on summary judgment because the efficient proximate cause of Plaintiff's losses has not been determined. As a general rule, the determination of efficient proximate cause of a loss is a question of fact for the factfinder, unless the facts are undisputed and the inferences therefrom are plain and incapable of reasonable doubt or difference of opinion. *See Graham v. PEMCO,* 98 Wash.2d 533, 539, 656 P.2d 1077 (1983). In the instant

case, the precise cause of the loss is unclear and has not been agreed upon by the parties. FM asserts that faulty construction and other factors appear to have caused, or contributed to, the damage the Estate suffered. *See* Daly Decl., docket no. 61, ¶ 5.

 Efficient proximate cause is the "predominant cause which sets into motion the chain of events producing the loss." *Graham*, 98 Wash.2d at 538, 656 P.2d 1077. If the efficient proximate cause of the loss is insured against, the loss is covered even though other events within the chain of causation are excluded from coverage. *Id.* Under Washington law, the efficient proximate cause rule applies whenever two or more independent forces operate to cause a loss. *See Kish v. Ins. Co. of N. Am.*, 125 Wash.2d 164, 170, 883 P.2d 308 (1994). The efficient proximate cause rule is applied only after determining (1) which single act or event was the efficient proximate cause of loss and (2) that the efficient proximate cause of the loss is a covered peril. *McDonald v. State Farm Fire & Cas. Co.*, 119 Wash.2d 724, 732, 837 P.2d 1000 (1992). An exclusion in an insurance policy precludes coverage if it excludes the efficient proximate cause of the loss. *Findlay v. United Pac. Ins. Co.*, 129 Wash.2d 368, 377, 917 P.2d 116 (1996). If the efficient proximate cause is a covered peril, then the exclusions will have no effect. *Id.* at 380; *McDonald*, 119 Wash.2d at 731, 837 P.2d 1000.

### B. Interpretation of Insurance Policy

Although the Court cannot grant summary judgment on the issue of coverage because efficient proximate cause is undetermined, the Court can "ascertain what material facts exist without substantial controversy" and resolve questions of law regarding insurance policy interpretation. FED. R. CIV. P. 56(d); *see also Allstate*

*Ins. Co. v. Smith*, 929 F.2d 447, 449–451 (9th Cir.1991) (discussing the interpretation of an insurance policy as a separate issue from causation); *Sunbreaker Condo. Ass'n v. Travelers Ins. Co.*, 79 Wash.App. 368, 374, 901 P.2d 1079 (1995) (stating that "the scope of the policy's coverage is, however, distinct from the issue of causation").

 The interpretation of insurance policy language is a question of law. *See Roller v. Stonewall Ins. Co.*, 115 Wash.2d 679, 682, 801 P.2d 207 (1990). The rules for interpreting insurance contracts are well-settled in Washington. In an all-risk insurance policy, any peril that is not specifically excluded in the policy is an insured peril. *Findlay v. United Pac. Ins. Co.*, 129 Wash.2d 368, 378, 917 P.2d 116 (1996) (citing *Villella v. Pub. Employees Mut. Ins. Co.*, 106 Wash.2d 806, 816, 725 P.2d 957 (1986)). The insurer bears the burden of proving that a claim falls within the scope of an exclusion. *Queen City Farms v. Central Nat'l Ins. Co. of Omaha*, 126 Wash.2d 50, 65, 891 P.2d 718 (1995). "Exclusionary clauses in insurance policies are strictly construed against the insurer." *Stouffer & Knight v. Cont'l Cas. Co.*, 96 Wash.App. 741, 747, 982 P.2d 105 (1999). A policy should be interpreted in a way that gives effect to each provision. *McDonald v. State Farm Fire & Cas. Co.*, 119 Wash.2d 724, 734, 837 P.2d 1000 (1992).

#### 1. Requirement that losses be "fortuitous"

 An insured bears the burden of showing that its loss falls within the scope of the policy's insured losses. *McDonald v. State Farm Fire & Cas. Co.*, 119 Wash.2d 724, 731, 837 P.2d 1000 (1992). The Court finds as a matter of law that an all-risk insurance policy only covers "fortuitous" losses. Under an all-risk policy, "recovery is allowed for fortuitous losses unless the loss is excluded by a specific

policy provision." G. Couch, L. Russ, & T. Segalla, 10 *Couch on Insurance Law,* § 148:50 (3d ed.1996). Despite its express terms, every all-risk policy "'contains an unnamed exclusion—the loss must be *fortuitous* in nature.'" *Intermetal Mexicana, S.A. v. Ins. Co. of N. Am.,* 866 F.2d 71, 75 (3d Cir.1989) (citing Cozen & Bennett, *Fortuity: The Unnamed Exclusion,* XX Forum 222, 222 (Winter 1985) (emphasis in original)); *see Univ. of Cincinnati v. Arkwright Mut. Ins. Co.,* 51 F.3d 1277, 1281 (6th Cir.1995); *Adams–Arapahoe Joint Sch. Dist. No. 28–J v. Cont'l Ins. Co.,* 891 F.2d 772, 775 (10th Cir.1989); *Underwriters Subscribing to Lloyd's Ins. Cert. No. 80520 v. Magi, Inc.,* 790 F.Supp. 1043, 1046 (E.D.Wash.1991); *see also McDonald v. State Farm Fire & Cas. Co.,* 119 Wash.2d 724, 731 n. 5, 837 P.2d 1000 (1992) (citing favorably a commentator who described "all risk" insurance as "a promise to pay upon the fortuitous and extraneous happening of loss or damage ... from any cause whatsoever"). The fortuity requirement exists as a matter of public policy because it would encourage fraud to permit recovery on an insurance loss which is certain to occur. *Underwriters,* 790 F.Supp. at 1046.

 Defendant claims that the term "fortuitous" means "caused by sudden, discrete events." *See* Def.'s Response, docket no. 59, at 18. The definition of "fortuitous" must be decided according to Washington law. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The Washington Supreme Court has not squarely defined the term "fortuitous." This Court therefore must predict what the state's highest court would decide. *See Kisor v. Johns–Manville Corp.,* 783 F.2d 1337, 1340 (9th Cir.1986). One group of cases, relying on hindsight, holds that a loss is not fortuitous if it was inevitable when the policy was issued. *See, e.g., Greene v. Cheetham,* 293 F.2d 933, 937 (2d Cir.1961). The more recent line of decisions rejects the use of hindsight and holds that "fortuitous" should be defined as provided in the Restatement of Contracts.[1] *See, e.g., Adams–Arapahoe,* 891 F.2d at 775 (10th Cir.1989) (Colorado law); *Compagnie des Bauxites de Guinee v. Ins. Co. of N. Am.,* 724 F.2d 369, 372 (3d Cir.1983) (Pennsylvania law); *Morrison Grain Co., Inc. v. Utica Mut. Ins. Co.,* 632 F.2d 424, 430–31 (5th Cir.1980) (Louisiana law); *Underwriters,* 790 F.Supp. at 1047–48; *Kilroy Indus. v. United Pac. Ins. Co.,* 608 F.Supp. 847, 858 (C.D.Cal. 1985) (opining that both California and Washington would "adopt the Restatement ... definition"). Under this line of cases, whether the parties could have reasonably foreseen the loss will determine whether the loss was fortuitous. "[A] fortuitous event is one which to the knowledge of the parties, is dependent upon chance." G. Couch, L. Russ, & T. Segalla, *Couch on Insurance Law,* § 148:50 (3d ed.1996). This Court follows the reasoning of the Eastern District of Washington in *Underwriters,* 790 F.Supp. 1043, 1048 (E.D.Wash.1991), and believes that the Washington Supreme Court would adopt a definition of "fortuitous" that would contain the following elements:

> the power of any human being to bring the event to pass; it may be within the control of third persons; it may even be a past event, such as the loss of a vessel, provided that the fact is unknown to the parties.

---

**1.** The Restatement of Contracts § 291, comment "a" (1932) provides in pertinent part: A fortuitous event ... is an event which so far as the parties to the contract are aware, is dependent on chance. It may be beyond

(a) a loss which was certain to occur cannot be considered fortuitous, and may not serve as the basis for recovery under an all-risk insurance policy;

(b) in deciding whether a loss was fortuitous, a court should examine the parties' perception of risk at the time the policy was issued;

(c) ordinarily, a loss which could not reasonably be foreseen by the parties at the time the policy was issued is fortuitous.

■■■ The Court also finds as a matter of law that under an all-risks policy, the insured bears the burden of showing that it suffered a loss and that the loss is fortuitous. *See Tex. E. Transmission v. Marine Office–Appleton & Cox Corp.*, 579 F.2d 561, 564 (10th Cir.1978) ("The general rule ... is that the burden is upon the insured to prove that a loss occurred and that it was due to some fortuitous event or circumstance."); *Atlantic Lines Ltd. v. American Motorists Ins. Co.*, 547 F.2d 11, 12 (2d Cir.1976); *Underwriters*, 790 F.Supp. at 1048. However, the insured need not demonstrate the precise cause of damage for the purpose of proving fortuity. *Morrison Grain Co.*, 632 F.2d at 430; *Atlantic Lines*, 547 F.2d at 13; *Underwriters*, 790 F.Supp. at 1048; *Pillsbury Co. v. Underwriters at Lloyd's, London*, 705 F.Supp. 1396, 1399 (D.Minn.1989); *Harbor House Condo. Ass'n v. Mass. Bay Ins. Co.*, 703 F.Supp. 1313, 1317 (N.D.Ill. 1988).

2. Interpretation of policy exclusions

■■■ Once the insured shows that the loss falls within the scope of the policy's insured losses, the insurer must show that a loss is specifically excluded to avoid coverage. *McDonald v. State Farm Fire & Cas. Co.*, 119 Wash.2d 724, 731, 837 P.2d 1000 (1992). The exclusions in the Form 3000 policy include:

● loss or damage or deterioration arising from delay;

● faulty workmanship, material, construction or design from any cause;

● deterioration, depletion, rust, corrosion or erosion, wear and tear, inherent vice or latent defect;

● settling, cracking, shrinking, bulging or expansion of foundations, floors, walls, ceilings and/or roofs;

● changes in temperature damage, changes in relative humidity damage;

● contamination, including but not limited to pollution, or hazardous materials, and

● changes in color, flavor, texture, or finish.

■■■ *See* Ex. D to Friedman Decl., docket no. 50, at FMIC 01471. No policy exclusion specifically excludes mold or water intrusion damage. Thus, the Court finds that as a matter of contract interpretation, the plain language of the Form 3000 policy is not ambiguous and does not exclude mold or water intrusion damage. An ambiguity exists only when "the language on its face is fairly susceptible to two different but reasonable interpretations." *Kish v. Ins. Co. of N. Am.*, 125 Wash.2d 164, 171, 883 P.2d 308 (1994) (quoting *Wash. Pub. Util. Dists.' Utils. Sys. v. Pub. Util. Dist. No. 1*, 112 Wash.2d 1, 11, 771 P.2d 701 (1989)).

In the alternative, if the policy exclusions were ambiguous, the Court would still find as a matter of law that the Form 3000 does not exclude mold or water intrusion damage.

a. The Court must construe any ambiguity against the insurer.

■■■ The Court must resolve ambiguities against the insurer. *Kish*, 125 Wash.2d at 170, 883 P.2d 308. "Exclusion-

ary clauses in insurance policies are strictly construed against the insurer." *Stouffer & Knight v. Cont'l Cas. Co.,* 96 Wash. App. 741, 747, 982 P.2d 105 (1999). Plaintiff and Defendant present competing interpretations of the policy exclusions. Plaintiff argues that because mold and water intrusion are not specifically excluded in the Form 3000 policy, the policy covers such damage. The Estate claims that mold and water intrusion are perils distinct from the exclusions listed in the policy. Defendant argues that the Estate's damage is excluded under the Form 3000's exclusions for "deterioration" and/or "contamination." *See* Ex. J to Friedman Decl., docket no. 50, at 99–103 (Alonso Deposition); Ex. G to Friedman Decl., docket no. 50, at 58–59 (Abbott Deposition). Because the Court must resolve ambiguities against the insurer, the Estate should prevail on its argument that because mold or water intrusion damage is not specifically excluded in the Form 3000 policy, it is covered by the policy.

 b. Extrinsic evidence supports Plaintiff's interpretation.

█ Extrinsic evidence is admissible as an aid to discerning the parties' intent. *See Berg v. Hudesman,* 115 Wash.2d 657, 667, 801 P.2d 222 (1990). Under Washington law, ambiguity in the meaning of contract language need not exist before evidence of the surrounding circumstances is admissible. *Id.* at 669, 801 P.2d 222. The Estate points to FM's removal of the mold exclusion in the transition from the Form 2000 policy to the Form 3000 policy, and FM's subsequent reinsertion of the mold exclusion in the Global Advantage policies, as support for its position that the Form 3000 does not contain a mold exclusion. FM claims that the reinsertion of the mold exclusion into the Global Advantage policies was merely for emphasis and that FM was being re-

dundant. *See* Ex. J to Friedman Decl., docket no. 50, at 99–103. The Estate's interpretation should control because the Court must interpret a contract so as to give effect to each provision. *McDonald v. State Farm Fire & Cas. Co.,* 119 Wash.2d 724, 734, 837 P.2d 1000 (1992). Thus, FM's explanation that the reinsertion of the mold exclusion was redundant and merely for emphasis runs contrary to principles of contract interpretation.

## II. Late Notice Defense

█ In order for an insurer to rely on late notice as a defense, the insurer bears the burden of establishing that it suffered actual prejudice. *See Or. Auto. Ins. Co. v. Salzberg,* 85 Wash.2d 372, 377, 535 P.2d 816 (1975); *Pilgrim v. State Farm Fire & Cas. Co.,* 89 Wash.App. 712, 723 n. 46, 950 P.2d 479 (1997). Defendant's reliance on the Declaration of Brian Daly, docket no. 61, is insufficient evidence to support a showing of prejudice to FM. At most, Mr. Daly states that in his opinion, if repair work had been done earlier to correct the causes of the water intrusion, deterioration and fungal growth could have been precluded or significantly reduced. *Id.* ¶ 8. Accordingly, Defendant's late notice defense in paragraph 74 of its Answer should be dismissed.

## III. Protective Order

Defendant has failed to show that the Estate breached the parties' Protective Order entered in the previous Market on the Lake action. *See* Ex. G to McCormack Decl., docket no. 60 (Protective Order). The record contains no indication that the Einstein Hospital information was designated as confidential. FM also failed to show that it suffered damage from any alleged breach. Therefore, Plaintiff is entitled to a grant of partial summary judg-

ment dismissing Defendant's counterclaim with prejudice.

## CONCLUSION

For the foregoing reasons the Court GRANTS IN PART and DENIES IN PART Plaintiff's motion for partial summary judgment, docket no. 48. IT IS HEREBY ORDERED AS FOLLOWS:

(1) Plaintiff has not established that the efficient proximate cause of its claimed damage is covered under FM's insurance policy. The determination of efficient proximate cause is a question of fact to be determined at trial. The Court DENIES Plaintiff's motion for partial summary judgment, docket no. 48, based on policy exclusions. However, pursuant to FED. R. CIV. P. 56(d), the Court finds as follows regarding the following questions of law:

(a) An all-risk insurance policy contains an unnamed exclusion that losses be fortuitous. This Court adopts a definition of "fortuitous" that contains the following elements:

(i) a loss which was certain to occur cannot be considered fortuitous, and may not serve as the basis for recovery under an all-risk insurance policy;

(ii) in deciding whether a loss was fortuitous, a court should examine the parties' perception of risk at the time the policy was issued;

(iii) ordinarily, a loss which could not reasonably be foreseen by the parties at the time the policy was issued is fortuitous.

Plaintiff bears the burden of showing that its loss is fortuitous in nature.

(b) As a matter of contract interpretation, the Court finds that the Form 3000 policy does not exclude mold or water intrusion damage because there is no specific exclusion. Alternatively, if the contract were ambiguous, any ambiguity must be construed against the insurer, so the Estate's interpretation that the policy does not exclude mold or water intrusion damage would prevail. Extrinsic evidence supports the Estate's interpretation.

(2) The Court GRANTS Plaintiff's motion for partial summary judgment, docket no. 48, and dismisses Defendant's late notice defense in paragraph 74 of its Answer.

(3) The Court GRANTS Plaintiff's motion for partial summary judgment, docket no. 48, and dismisses Defendant's counterclaim with prejudice.

(4) The Court DENIES Defendant's request to strike extrinsic evidence, docket no. 69.

IT IS SO ORDERED.