[No. 28044-6-III.   Division Three.   February 11, 2010.]

Northwest Bedding Company, *Appellant*, v. National Fire Insurance Company of Hartford et al., *Respondents*.

*Kevin W. Roberts* and *John C. Black* (of *Dunn & Black PS*), for appellant.

*Curt E.H. Feig* and *Thomas J. Braun* (of *Nicoll Black & Feig PLLC*), for respondents.

¶1 SWEENEY, J. — This is an insurance coverage dispute between a commercial business and an insurance company. The insurance company refused to cover water damage that followed an unusually fast snowmelt that overwhelmed man-made ditches and flooded the business's property. The trial judge agreed with the insurance company that the loss resulted from surface water and that surface water was an excluded peril under the terms of the insurance policy. We agree and affirm the summary dismissal.

## FACTS

¶2 National Fire Insurance Company of Hartford is wholly owned by CNA Foundation Corporation (collectively

National Fire). It insured Northwest Bedding Co. under an all-risk commercial property coverage and commercial general liability insurance policy. The policy insured Northwest Bedding's buildings and property in Spokane, Washington, and covered "direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss." Clerk's Papers (CP) at 60, 61. "Covered Property" includes "Business Personal Property," which includes furniture, fixtures, equipment, "Stock" and other personal property, labor, and services furnished or arranged by the business on the premises. CP at 61.

¶3 The Spokane area experienced heavy snowfall during the winter of 2007-08. Toward the end of February, the Washington State Department of Transportation and others diverted snowmelt through trenches in the vicinity of Northwest Bedding. Several drainage ditches ran through the area around Northwest Bedding. The water overflowed the trenches onto Northwest Bedding's property and building, inundated Northwest Bedding's building, and damaged both the building and property.

¶4 National Fire concluded that the loss was the result of surface water and, therefore, excluded from coverage. And it denied coverage.

¶5 Northwest Bedding sued National Fire for damages and a judicial declaration that the loss was covered. The parties agreed that there were no issues of material fact (and that is also apparent from our reading of the record) and filed cross motions for summary judgment. The trial court agreed with National Fire and granted its motion for summary judgment and denied Northwest Bedding's.

## DISCUSSION

¶6 We review a trial court's summary judgment order de novo; we engage in the same review as the trial court and view the evidence in the light most favorable to the nonmoving party. *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990). The interpretation of

insurance contracts also presents a question of law that we review de novo. *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wn.2d 165, 171, 110 P.3d 733 (2005).

¶7 We apply a number of canons of construction when passing on the meaning of an insurance policy. We strictly construe an ambiguous exclusionary clause against the insurer. *Rodriguez v. Williams*, 107 Wn.2d 381, 384, 729 P.2d 627 (1986); *Kish v. Ins. Co. of N. Am.*, 125 Wn.2d 164, 883 P.2d 308 (1994). A provision of the policy is ambiguous if " 'it is fairly susceptible to two different interpretations, both of which are reasonable.' " *Lynott v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 123 Wn.2d 678, 690, 871 P.2d 146 (1994) (quoting *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 733, 837 P.2d 1000 (1992)).

¶8 An "all-risk" policy covers any peril that is not specifically excluded in the policy. *Findlay v. United Pac. Ins. Co.*, 129 Wn.2d 368, 378, 917 P.2d 116 (1996). But even all-risk policies may exclude certain perils; we will interpret this policy in a way that gives effect to each provision. *McDonald*, 119 Wn.2d at 734. An insured contesting the denial of coverage must first show that the loss falls within the scope of the policy's covered losses. *Diamaco, Inc. v. Aetna Cas. & Sur. Co.*, 97 Wn. App. 335, 337, 983 P.2d 707 (1999). The insurer then must show that the claim of loss is excluded. *Queen City Farms, Inc. v. Cent. Nat'l Ins. Co. of Omaha*, 126 Wn.2d 50, 71, 882 P.2d 703, 891 P.2d 718 (1994).

¶9 Northwest Bedding contends that the trial judge erred when she concluded that the loss here resulted from an excluded peril—surface water—because the loss resulted instead from third parties channeling water onto Northwest Bedding's property. National Fire responds that the loss was clearly the result—directly or indirectly—of surface water caused by an unusually fast snowmelt. And the fact that water may have been channeled onto Northwest Bedding's property by ditches and pipes does not change the fact that the loss was the result of surface water. Moreover, National Fire argues that any claim that the loss

was due to diversion, rather than surface water, became untenable when the water here overflowed the ditches and returned to its state as "surface water."

¶10 The policy does not define the two excluded water perils at issue here: damage caused by flooding or surface water. Undefined terms in insurance policies should be given their plain, ordinary, and popular meaning. *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 877, 784 P.2d 507 (1990). The language in standard form policies is interpreted in accord with the understanding of the average purchaser even if the insured is a more sophisticated business actor. *Id.* at 882-83.

¶11 Washington courts have characterized "surface water" as follows:

> The chief characteristic of surface water is its inability to maintain its identity and existence as a body of water. It is thus distinguished from water flowing in its natural course or collected into and forming a definite and identifiable body, such as a lake or pond.

*Halverson v. Skagit County*, 139 Wn.2d 1, 15, 983 P.2d 643 (1999).

¶12 The parties disagree about the location of the ditch and whether its location bears on the character of the water inundating Northwest Bedding's building. Northwest Bedding describes the ditch as "butt[ing]" onto the Northwest Bedding premises "in an almost perpendicular orientation." CP at 157. National Fire describes the ditch as "bordering Northwest Bedding's property." Br. of Resp't at 11. Northwest Bedding relies on a Colorado case, *Heller v. Fire Ins. Exch.*, 800 P.2d 1006 (Colo. 1990), to argue that this distinction matters. In *Heller*, the court found that water damage on a homeowner's property was not surface water because it was caused by snowmelt being diverted over a natural ridge by man-made trenches that carried the water in channels to the insured property. *Heller*, 800 P.2d at 1009.

¶13 But for us the characterization of the drainage ditch does not present a material question of fact because *Heller*

itself does not make clear that the trenches actually entered the property. *Id.* They merely carried the water directly up to the property, just as occurred in either description of the ditch by Northwest Bedding or National Fire. *Id.* The video in evidence also describes the ditch as "ending" at the Northwest Bedding property. Plaintiff's Ex. 1.

¶14 Here, drainage ditches carried water across relatively flat terrain. Abnormally heavy snowfall followed by rapid snowmelt overwhelmed the drainage ditches and forced water onto land that could not readily absorb the water because of frozen soil and bedrock close to the surface. So, regardless of what form it took between its origin and across the land of Northwest Bedding's neighbors, the water that caused the damage to Northwest Bedding's property was certainly surface water once it overflowed the ditch ending at the border of Northwest Bedding's property. *Sund v. Keating*, 43 Wn.2d 36, 42, 259 P.2d 1113 (1953).

¶15 The water here might also be characterized as floodwaters, another exclusion of this policy. In analyzing whether rain and flood are distinct perils for purposes of an exclusionary provision, the Washington Supreme Court surveyed various dictionary definitions of flood:

> *Webster's*, for example, defines "flood" as "a rising and overflowing of a body of water that covers land not usu[ally] under water : DELUGE, FRESHET". *Webster's Third New International Dictionary* 873 (1986). *Webster's* further defines "deluge" as "an overflowing of the land by water : INUNDATION, FLOOD . . . a drenching rain : DOWNPOUR". *Webster's Third New International Dictionary* 598 (1986). . . . [S]ee also *American Heritage Dictionary of the English Language* 697 (3d ed. 1992); *Random House Dictionary of the English Language* 736 (2d ed. 1987) (also stating that the term "flood" "refer[s] to the overflowing of normally dry areas, often after heavy rains").

*Kish*, 125 Wn.2d at 171 (some alterations in original).

¶16 The water that Northwest Bedding itself describes as inundating its premises was delivered to the normally dry property by an overflowing ditch. And, while we strictly

construe exclusions, "strict construction should not overcome 'plain, clear language resulting in a strained or forced construction.'" *Diamaco*, 97 Wn. App. at 342 (quoting *City of Bremerton v. Harbor Ins. Co.*, 92 Wn. App. 17, 21, 963 P.2d 194 (1998)). We, therefore, reject Northwest Bedding's argument that water flowing through drainage culverts or ditches is not a body of water or that a reasonable person considers only a water formation such as a lake or an ocean a body of water. The water that damaged Northwest Bedding's property is reasonably characterized by National Fire as both surface water and a flood.

¶17 Northwest Bedding also argues that the trial court failed to identify and give legal effect to the efficient proximate cause of this loss. The determination of efficient proximate cause of a loss is generally a question of fact for the fact finder. *Graham v. Pub. Emps. Mut. Ins. Co.*, 98 Wn.2d 533, 539, 656 P.2d 1077 (1983). But it is a question of law if the facts are undisputed and the inferences from those facts are plain and incapable of reasonable doubt or difference of opinion. *Id.* Here, the parties agree on the essential chain of events that caused Northwest Bedding's damage. The dispute centers on whether the original diversion of water by a third party is a distinct peril that was the efficient cause of Northwest Bedding's loss.

¶18 "Efficient proximate cause" is the "predominant cause which sets into motion the chain of events producing the loss." *Id.* at 538. If the efficient proximate cause of the loss is covered by the insurance policy, the loss is covered even though other events within the chain of causation are excluded from coverage. *Id.* The efficient proximate cause rule applies when two or more independent forces operate to cause a loss. *Kish*, 125 Wn.2d at 170. But we apply the efficient proximate cause rule only after determining (1) which single act or event was the efficient proximate cause of loss and (2) that the efficient proximate cause of the loss is a covered peril. *McDonald*, 119 Wn.2d at 732. An exclusion in an insurance policy precludes coverage if it excludes the efficient proximate cause of the loss.

*Findlay*, 129 Wn.2d at 377. But if the efficient proximate cause is a covered peril, then the exclusions have no effect. *Id.* at 380; *McDonald*, 119 Wn.2d at 731.

¶19 So, the key question here is whether the overflow of a drainage system constructed or manipulated by one or more third parties is an independent peril from the snowmelt and surface water and flood that inundated Northwest Bedding's premises. It is not. Diversion of water flowing in a large area, whether from snowmelt or not, is what the average purchaser of insurance would expect the words "flood" and "surface water" to encompass. *See Kish*, 125 Wn.2d at 171.

¶20 We affirm the summary dismissal of Northwest Bedding's suit.

¶21 We also deny Northwest Bedding's request for attorney fees and costs. Northwest Bedding did not prevail at trial or on appeal and is not, therefore, entitled to a fee or cost award under any theory. RAP 18.1(a); *Malted Mousse, Inc. v. Steinmetz*, 150 Wn.2d 518, 535, 79 P.3d 1154 (2003).

BROWN, A.C.J., and KORSMO, J., concur.

Review denied at 169 Wn.2d 1012 (2010).