# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

CENTRALBANC MORTGAGE
CORPORATION, a California
Corporation,

      Appellant,

  v.

SOLUTIONS FINANCIAL GROUP,
INC.; a Washington corporation;
NORTH AMERICAN SPECIALTY
INSURANCE COMPANY MORTGAGE
BROKER BOND NO. SUR 202179;
CHOICE ESCROW, INC., a Washington
corporation; and JULIE A. DEKMAN
AND SLAVA DEKMAN, husband and
wife, and the marital community composed
thereof, ALLA PYATETSKAY and DAVID
SOBOL, husband and wife and the marital
community composed thereof,

      Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 69746-3-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: December 22, 2014

SPEARMAN, C.J. — CentralBanc Mortgage Corporation (CMC), a mortgage lender, claims it suffered damages as a result of acts or omissions by Choice Escrow, Inc. (Choice) and Julie A. Dekman (Dekman), escrow agents, in conjunction with a fraudulent mortgage application. CMC appeals the trial court's order granting summary judgment dismissal to Choice and Dekman.[1] It contends that a genuine issue of material fact exists as to each element of its claims, that it

---

[1] CMC also appealed the order granting summary judgment to North American Specialty Insurance Company but the parties settled before oral argument. We granted their request to dismiss the appeal.

is entitled to relief under the doctrine of equitable subrogation, and that the trial court committed reversible error when it failed to allow CMC time to amend its complaint to add the true plaintiff in interest. We affirm.

FACTS

Background

This action arises from a residential real estate purchase and sale transaction that closed on February 16, 2006. A buyer, Andrey Stukov, worked with Solutions Financial Group, Inc. (Solutions Financial), a licensed mortgage broker, to obtain financing for a home located at 2106 Fairmount Avenue Southwest, Seattle, Washington (the Fairmount property). Solutions Financial brought the Stukov loan package to CMC, a mortgage lender, for underwriting and approval of a $900,000 home loan. CMC approved two purchase money mortgages, which totaled $845,000 ($720,000 on the first loan and $125,000 on the second). The transaction was closed by Julie Dekman, an employee of Choice.

Immediately after closing the two Stukov loans, CMC sold them on the secondary market to American Home Mortgage Corporation (AHMC) pursuant to a written purchase agreement. The agreement contained a provision under which a first payment default by the borrower, Stukov, constituted fraud per se and legal grounds for AHMC to "deem" the Stukov loans "deficient" and to demand immediate repurchase of the Stukov loans by CMC (the buy-back clause). Clerk's Papers (CP) at 69, 963 ¶ 3.

In funding the two Stukov loans, CMC claims it relied on Stukov and Solutions Financial's representations in the loan application, as well as the disclosures and Settlement Statement provided by Choice at closing.[2] However, shortly after closing CMC learned that, contrary to these representations, Stukov's pre-existing home loan had been delinquent for three months prior to closing, his business had suffered substantial reversals, the income he reported in the loan application was false, and he had never actually occupied the Fairmount property. CMC also discovered that Choice's disclosures and settlement statement had been incomplete or incorrect and did not reflect the actual details of the transaction.

CMC also learned that its own employee, Alla Pyatetskay, had participated actively in Stukov's scheme to submit fraudulent loan documents. Pyatetskay had ratified and retransmitted the false documents submitted by Choice, causing CMC to fund loans that it would not have approved had it been

---

[2] Aside from the "Program Disclosure" referenced in CMC's closing instructions (CP at 1001), it is unclear from the record exactly which "disclosures" CMC allegedly relied upon. In its Second Amended Complaint, CMC bases its breach of contract action on Choice and Dekman's failure "to fully inform CentralBanc regarding the escrow and its closing, by failing to properly complete the HUD-1 Settlement Statement and by disbursing loan proceeds to individuals and/or entities not identified on the HUD-1 Settlement Statement." CP at 12. CentralBanc bases its breach of fiduciary duty claim on Choice and Dekman's failure "to disclose and detail the particulars of the escrow closing they conducted and made disbursements of loan proceeds from escrow to third parties without reflecting those disbursements on the HUD-1 Settlement Statement." CP at 13. The copy of Choice's Settlement Statement included in our record is nearly illegible, though it is marked "BEST AVAILABLE IMAGE POSSIBLE." CP at 1004. There is no Program Disclosure or other "disclosures" from Choice in the record.

fully informed of the material facts surrounding the sale, escrow, closing, and structuring of the loans to Stukov.

Stukov failed to make the first payment due on the loans, which constituted fraud per se under the purchase agreement between CMC and AHMC. In response, on or about April 2006, John Delaney, the principal of CMC, submitted a demand letter to Solutions Financial, alleging fraudulent conduct that created liability on the part of Solutions Financial and demanding that it repurchase the Stukov loans as a remedy.

By September 2006, AHMC had instituted non-judicial foreclosure proceedings. Later, in a letter dated January 17, 2007, AHMC demanded that CMC repurchase "Loan # 1191795" for $806,438.99, plus per diem, pursuant to the buy-back clause. CP at 801-02. The demand letter did not mention two loans and the amount requested did not correspond with the amount of either Stukov loan at the time of funding.[3] CMC took no immediate action on this demand. On January 26, 2007, a nonjudicial foreclosure sale of the Fairmount property occurred. AHMC submitted a winning bid of $779,877.23 and obtained title to the property.

On June 8, 2007, over four months after AHMC acquired title to the Fairmount property in the foreclosure sale, Delaney bought the Fairmount property from AHMC in his personal capacity for $813,478. At the time of summary judgment, Delaney still owned the Fairmount property. CMC claims that

---

[3] One Stukov loan was for $720,000 and the other for $125,000.

4

it has made and continues to make monthly payments to Delaney as reimbursement for the amount he paid to purchase the property. CMC also claims that in response to AHMC's demand, it repurchased the second loan by direct payment to AHMC in the amount of $145,249.97.

Procedural History

On November 17, 2006, two months before AHMC made its demand for repurchase, CMC initiated this lawsuit, asserting tort and contract claims against Solutions Financial and its bonding company, North American Specialty Insurance Company (NASIC). On August 6, 2007, CMC filed its first amended complaint which added claims against Stukov, Choice and its employee, Dekman and her husband, Slava Dekman. CMC dismissed its claims against Stukov on October 22, 2007. On August 1, 2008, CMC filed a second amended complaint which added Alla Pyatetskay and her husband, David Sobol, as defendants.

With respect to Choice and Dekman, CMC alleged breach of contract, breach of fiduciary duty, fraudulent misrepresentation, negligent misrepresentation, and violation of the Consumer Protection Act (chapter 19.86 RCW), all arising from Choice's allegedly false disclosures of the details related to closing. CMC claimed that it has suffered over $500,000 in damages, comprised of reimbursement of mortgage payments made by Delaney on his note for the Fairmount property, property taxes and insurance, the direct payment CMC claims it made to AHMC to repurchase the second Stukov loan, and attorney fees.

5

On October 4, 2012, Choice and Dekman moved for summary judgment, arguing that CMC had sustained no damages as a result of their actions and any claims which Delaney might have asserted in his personal capacity were barred by the statute of limitations. The trial court entered summary judgment in favor of Choice and Dekman on November 2, 2012. Because entry of judgment did not resolve the claims against Solutions Financial, Pyatetskay and Sobol, on November 15, 2012, Choice and Dekman moved the trial court for entry of final judgment as to them pursuant to CR 54(b).[4] The motion was set to be heard on the same date the trial was scheduled to commence, November 19, 2012. When CMC failed to appear on that date the court granted the CR 54(b) motion. On November 27, 2012, the trial court issued an order directing entry of a final judgment as to Choice and Dekman, on which it noted "[t]the trial date of Nov. 19, 2012 came and no one appeared for trial & the Ct. has received no objection to this motion." CP at 202. Final judgment in Choice and Dekman's favor was entered on November 27, 2012. CMC appeals.

## DISCUSSION

### Summary Judgment

We review summary judgment decisions de novo. Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). A genuine issue of material fact

---

[4] The claims against Solutions Financial were dismissed on March 22, 2013, nunc pro tunc to November 19, 2012, the trial date at which CMC failed to appear.

exists if "reasonable minds could differ on the facts controlling the outcome of the litigation." Ranger Ins. Co., 164 Wn.2d at 552 (citing Wilson v. Steinbach, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982)). When determining whether an issue of material fact exists, the court must construe all facts and inferences in favor of the nonmoving party. Id.

Summary judgment is subject to a burden-shifting scheme. Id. The initial burden to show the nonexistence of a genuine issue of material fact is on the moving party. Id; see also, Vallandigham v. Clover Park School Dist. No. 400, 154 Wn.2d 16, 26, 109 P.3d 805 (2005). For example, a defendant may move for summary judgment by showing that there is an absence of evidence to support an essential element of the plaintiff's claim. Sligar v. Odell, 156 Wn. App. 720, 725, 233 P.3d 914 (2010) (citing Young v. Key Pharm., Inc., 112 Wn.2d 216, 225 n.1, 770 P.2d 182 (1989) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once this initial showing is made, the inquiry shifts to the plaintiff to make a showing of facts sufficient to establish the existence of all essential elements of its case. Odell at 725 (citing Celotex, 477 U.S. at 322).

"'The 'facts' required by CR 56(e) to defeat a summary judgment motion are evidentiary in nature. Ultimate facts or conclusions of fact are insufficient. Likewise, conclusory statements of fact will not suffice.'" Overton v. Consol. Ins. Co., 145 Wn.2d 417, 430-31, 38 P.3d 322 (2002) (quoting Grimwood v. Univ. of Puget Sound, 110 Wn.2d 355, 359, 753 P.2d 517 (1988) (citation omitted).

In their motions for summary judgment Choice and Dekman contended that, as to the first loan for $720,000, CMC failed to present sufficient evidence to create a disputed issue of material fact as to whether CMC suffered any damages caused by an act or omission of either Choice or Dekman.[5] As to the second loan for $125,000, Choice and Dekman argued that CMC failed to produce any admissible evidence that it had been damaged at all. The trial court agreed and dismissed CMC's claims. On appeal, CMC argues the trial court erred. We disagree.

Causation consists of two elements: cause in fact and legal causation. City of Seattle v. Blumes, 134 Wn.2d 243, 251-52, 947 P.2d 223 (1997). Cause in fact refers to the "but for" consequences of an act that is the immediate connection between and act and an injury. Id. Legal causation rests on policy considerations determining how far the consequences of a defendant's act should extend. It involves the question of whether liability should attach as a matter of law, even if the proof establishes cause in fact. Id. at 252. The legal cause of an injury is a cause that, in a direct sequence, unbroken by any new, independent cause, produces the injury complained of and without which the injury would not have occurred. Stoneman v. Wick Constr., Co., 55 Wn.2d 639, 349 P.2d 215 (1960); Fabrique v. Choice Hotels Int'l, Inc., 144 Wn. App. 675, 183 P.3d 1118 (2008).

---

[5] CMC does not dispute that causation is a material element to each of its claims against Choice and Dekman.

Regarding the first loan, CMC argues that but for the failure of Choice and Dekman to disclose certain details regarding the Stukov loan application, it would not have incurred the expense of reimbursing its principal, Delaney, for the cost of purchasing the Stukov property from AHMC. Viewing the evidence in the light most favorable to CMC, as we must, we assume its allegations of malfeasance by Choice and Dekman are true. We also assume that, but for the conduct of Choice and Dekman, CMC would not have incurred the obligation to repurchase the Stukov loan because it would not have made the loan or sold it to AHMC. There is also evidence that at least as to one of the loans, AHMC did, in fact, demand that CMC fulfill this obligation. But here, the direct sequence of events proceeding from the conduct of Choice and Dekman to CMC's alleged injuries ends. Because there is no evidence that CMC ever complied with AHMC's demand, CMC cannot show that it was injured by Choice and Dekman's conduct.

CMC contends that the direct sequence of events remains unbroken because Delaney's purchase of the Stukov property from AHMC was in satisfaction of CMC's obligation to repurchase the Stukov loan and that CMC, in turn, was obliged to reimburse Delaney for this expenditure. The contention is without merit.

First, under its contract with AHMC, CMC was obligated to repurchase the Stukov loan, not the Stukov property. CMC has not identified any provision in the contract that obligated it purchase the property from AHMC.

Second, because the foreclosure sale extinguished AHMC's right to recover a deficiency on the loan and satisfied all obligations on the loan, it also

9

extinguished CMC's legal obligation to repurchase the loan.[6] CMC cites no provision in the contract with AHMC or any other legal basis under which the obligation to repurchase the loan survived the foreclosure sale. Thus, Delaney's purchase of the Stukov property was more the act of a volunteer and not in satisfaction of a legal obligation CMC owed to AHMC.[7]

Third, CMC's claim that Delaney's purchase of the Stukov property legally obligated it to repay him is unpersuasive. Even if Delaney was personally obligated to purchase the property, it does not follow that CMC was legally obligated to reimburse him. CMC argues that such a legal obligation exists because it passed a corporate resolution agreeing to repay Delaney. But even assuming the resolution was sufficient to legally oblige CMC, the issue is whether the obligation was imposed upon CMC as a direct result of the conduct of Choice and Dekman. By its own argument, CMC's obligation to reimburse Delaney arises out of its corporate resolution. Had the obligation arisen directly from the conduct of Choice and Dekman, no resolution would have been necessary to establish it. Because CMC failed to establish a sequence of events by which the conduct of Choice and Dekman triggered a legal obligation for CMC to reimburse Delaney, the trial court properly dismissed this claim.

---

[6] See RCW 61.24.100; 27: MAJORIE DICK ROMBAUER, WASHINGTON PRACTICE: CREDITORS' REMEDIES—DEBTORS' RELIEF § 3.37 AT 175 (1998). ("For years the rule has been that no deficiency may be recovered after a nonjudicial foreclosure" not involving a commercial loan).

[7] CMC pointed out at oral argument that the motivation for Delaney's payment was to maintain good relations with AHMC, its primary customer. "There's a relationship between [CMC and AHMC]. In order to continue making loans and continue the business relationship, it was absolutely required that [CMC] make [AHMC] whole in every single way." Wash. Court of Appeals oral argument, CentralBanc Mortgage v. Solutions Financial, No. 69746-3-I, (September 18, 2014) at 40 min., (on file with the court).

CMC claims that it repurchased the second loan from AHMC pursuant to the buy-back clause and a demand from AHMC. It claims damages in the amount of the repurchase price—$145,249.97. But the only evidence offered in support of these damages consists of conclusory statements of ultimate facts, which are insufficient to raise a fact issue on summary judgment.

Baldwin v. Silver, 165 Wn. App. 463, 269 P.3d 284 (2011), is instructive. The case involved a dispute between homeowners, the Silvers, and the carrier of their homeowner's insurance policy for amounts allegedly due on a claim for fire damage. The insurer moved for summary judgment, arguing that the homeowners had produced no evidence of damages because the insurer had overpaid the total claims made, as evidenced by the various estimates and receipts submitted to the insurer by the homeowners during the course of repairs. In response, the homeowners submitted the affidavit of Ms. Silver, in which she claimed that the insurer owed the homeowners an additional $10,000 because, as a result of a fire, their deck had been destroyed, it had not been repaired yet, and the damage necessitated removal and replacement of the deck. The homeowners submitted no estimates, receipts, or other evidence in support of the claimed damage to the deck. In reply, the insurance company argued that Ms. Silver's affidavit was insufficient to avoid summary dismissal because it amounted to nothing more than conclusory, unsupported statements with no proof of actual damages. Id. at 469-70.

The trial court refused to consider the affidavit as proof of damages. On review, we affirmed, reasoning:

> The trial judge's refusal to consider Ms. Silver's affidavit as proof of damages was also reasonable and proper. What the judge did here was refuse to consider the conclusory, unsupported statements set out in the affidavits. Though the trial court may be lenient to a nonmoving party's affidavits presented in response to a motion for summary judgment, it may not consider conclusory statements contained in the nonmoving party's affidavits. Pub. Util. Dist. No. 1 of Lewis County v. Wash. Pub. Power Supply Sys., 104 Wn.2d 353, 361, 705 P.2d 1195, 713 P.2d 1109 (1985). A nonmoving party cannot defeat a motion for summary judgment with conclusory statements of fact. Overton v. Consol. Ins. Co., 145 Wn.2d 417, 430–31, 38 P.3d 322 (2002).
>
> In her affidavit, Ms. Silver claimed that the damage to her deck was worth $10,000. But no receipt, quote, or any other piece of evidence supports her statement. The statement, then, is nothing more than an unfounded, conclusory statement of damages.

Baldwin at 471.

In this case, as in Baldwin, one of the ultimate facts to be proven was damages, specifically that CMC incurred damages of $145,249.97 when it repurchased the second loan from AHMC. In response to the defense motion for summary judgment, which asserted that there was no fact issue with respect to damages, CMC offered three declarations from its principal, Delaney. Neither the first nor the third declaration even mentions CMC's claimed repurchase of the second loan.

In his second declaration (dated October 2, 2012 and filed October 4, 2012). Delaney mentioned the second loan specifically. He stated:

> I revised and update my damage statement made in my principal declaration. After reviewing and including the loan payoff of the Stukov second mortgage and tabulating all expenditures related to the repurchase of the Stukov first and second loan, I provide the following summary. . . .

12

CP at 937. The summary provided revised the previously submitted "Schedule of Damages," adding a line item for "Second Loan Payoff" as a $145,249.97 liability on CMC's books. This conclusory assertion that CMC incurred a loss is analogous to those in Baldwin, which we deemed insufficient to raise a fact issue on damages.

An exhibit attached to Delaney's second declaration, Exhibit A, purports to substantiate Delaney's conclusory statements. The exhibit includes two purported CMC accounting records: a spreadsheet entitled "Register QuickReport" (CP at 941), which has one line item entitled "Total 2nd loan expense," which it lists as $145,249.97; and a list of CMC's alleged reimbursements to Delaney for payments he made on the note for the Fairmount property. At first glance, Exhibit A appears to support Delaney's assertions but on close inspection, the exhibit consists of nothing more than additional conclusory statements. It is unclear from the record what the source and purpose of these records are, but, based on Delaney's statements, it appears that they exist only for purposes of this litigation. "I provide the following summary of expenses and assets derived from 1206 Fairmount, Seattle[,] WA. Please refer to Exhibit A, to my Supplemental Declaration." CP at 937. Other than these unsupported and self-serving assertions, CMC provided no documentation of a transaction with AHMC, in which it purportedly transferred over $145,000. We conclude the trial court properly granted summary judgment as to this claim because the records submitted by CMC in support of it claimed damages are insufficient to create a material factual dispute on that issue.

Failure to Add Delaney as a Plaintiff

CMC argues at length in its briefs that Delaney is the true party in interest in this case and assigns error to the trial court's alleged failure to allow sufficient time to amend its complaint adding Delaney as a plaintiff. Because CMC never moved the trial court to amend, we find no basis for this claimed error.

The decision to grant leave to amend the pleadings is within the discretion of the trial court. Wilson v. Horsley, 137 Wn.2d 500, 505, 974 P.2d 316 (1999). Therefore, when reviewing the court's decision to grant or deny leave to amend, we apply a manifest abuse of discretion test. Id. The trial court's decision "'will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" Id. (quoting State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

A party's failure to timely name a necessary party cannot be remedied if the failure resulted from inexcusable neglect. Teller v. APM Terminals Pac. Ltd., 134 Wn. App. 696, 142 P.3d 179 (2006). "Generally, inexcusable neglect exists when no reason for the initial failure to name the party appears in the record." Id. at 706. The failure to name a party who is apparent or ascertainable upon reasonable investigation, is inexcusable. Id.

The inexcusable neglect standard of CR 15(c) has been applied where a change in plaintiffs is made. Beal for Martinez v. City of Seattle, 134 Wn.2d 769, 954 P.2d 237 (1998). When the change in plaintiff is only in the representative capacity in which the suit is brought, i.e., a personal representative substituted

for a guardian, or a bankruptcy trustee for the debtor, then the courts have relaxed the inexcusable neglect standard. Id.; Miller v. Campbell, 164 Wn.2d 529, 192 P.3d 352 (2008).

In this case, Choice and Dekman filed their answer to the Second Amended Complaint and raised as affirmative defenses that "Plaintiff did not buy back the loans in question, **is not the real party in interest** and suffered no damages" on October 4, 2012. CP at 402 (emphasis added). That same day, Choice's and Dekman's motion for summary judgment was also filed. The hearing on the motion did not occur until November 2, 2012. Thus, CMC had nearly a month to file a motion to amend to add Delaney as a plaintiff. Moreover, when argument on the summary judgment motion was heard on November 2, the case had been pending for six years and CMC had twice amended its complaint to add additional parties.

Given the long pendency of this lawsuit, CMC's notice that Choice and Dekman intended to challenge its status as the real party in interest, and Delaney's active participation in the lawsuit, there is no justifiable reason for CMC's failure to move the court to add Delaney as a plaintiff. Moreover, adding Delaney as a plaintiff would not have been the type of change in representative capacity warranting relaxation of the inexcusable neglect standard. CMC's failure to file a motion to amend to add Delaney as a plaintiff was inexcusable neglect, not subject to remedy on appeal.

## Equitable Subrogation

CMC also argues for the first time on appeal that this court should grant it relief under the doctrine of equitable subrogation. "On review of an order granting or denying a motion for summary judgment the appellate court will consider only evidence and issues called to the attention of the trial court." RAP 9.12. A party may not propose new theories of the case that could have been raised before entry of an adverse decision. Wilcox v. Lexington Eye Institute, 130 Wn. App. 234, 122 P.3d 729 (2005). Because CMC failed to raise this argument below, we decline to consider it.

Affirm.

WE CONCUR:

_Spearman, C.J._

_Appelwick, J._